MARTHA A. T. FORBES, Respondent, *v.* WILKIE TODD
et al., Appellants, Impleaded with Others.

(Argued January 10, 1935; decided March 12, 1935.)

*Sydney A. Syme* for appellants. The rule that the statute begins to run when the fraud is discovered has its exceptions. If the fraud could have been discovered at an earlier date in the exercise of reasonable diligence the time begins to run at such date. (*Higgins* v. *Crouse,* 147 N. Y. 411; *Dyckman* v. *Dyckman,* 230 App. Div. 288; *Ford* v. *Clendenin,* 215 N. Y. 10; *Wooley* v. *Stewart,* 222 N. Y. 347; *Sielcken-Schwarz* v. *American Factors, Ltd.,* 265 N. Y. 239.)

*S. Joseph Oxenberg* and *Irving Kornblum* for respondent. The plaintiff has legally proved that the deed of May, 1909, was procured to be delivered by fraud and undue influence and should be set aside. (*White* v. *Benjamin*, 150 N. Y. 258; *Hickok* v. *Cowperthwait*, 134 App. Div. 617; *Soilson* v. *Nemeth*, 184 N. Y. Supp. 627; *Eysaman* v. *Nelson*, 79 Misc. Rep. 304; *Haviland* v. *Willets*, 141 N. Y. 35; *Morris* v. *Morris*, 138 Misc. Rep. 682; *Berry* v. *American Central Ins. Co.*, 132 N. Y. 49; *Simon* v. *Supreme Council American Legion of Honor*, 91 App. Div. 390; *Matter of Smith*, 95 N. Y. 516; *Barnard* v. *Gantz*, 140 N. Y. 249; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 341; *Cowee* v. *Cornell*, 75 N. Y. 91; *Sears* v. *Shafer*, 6 N. Y. 268; *Case* v. *Case*, 49 Hun, 83; *Swanstrom* v. *Day*, 46 Misc. Rep. 311; *Allen* v. *La Vaud*, 213 N. Y. 322.)

LOUGHRAN, J. This action was brought in 1930 to annul a conveyance of real property made May 19, 1909. Plaintiff is the sole heir at law of the deceased grantor. The grantees, nephews of the grantor, are the principal defendants. The trial court dismissed the complaint, holding that the instrument assailed by plaintiff was the free and deliberate act of her ancestor, and that, in any event, the cause of action accrued in 1909 and was barred by the Statute of Limitations. The Appellate Division, two justices dissenting, reversed that ruling and, upon new findings, directed the judgment demanded by plaintiff. We are to search the record and, with appropriate respect for the findings of the trial court, are to review the facts found by the Appellate Division. (*York Mortgage Corp.* v. *Clotar Constr. Corp.*, 254 N. Y. 128, 134.)

The history of the case goes back to 1906 when the grantor, William Todd, lived on the property, a farm in the town of Cortlandt, Westchester county, which had descended to him after proprietorship in his family for more than a century. William Todd was then contemplating marriage with the woman who kept his house. His nearest kin were his nephews, the defendants Wilkie

Todd and Alpheus Todd. He conveyed the farm to them on November 10, 1906, and they gave back to him a lease for his life of half of it. Those transactions were supervised by Robert McCord, a lawyer to whose professional keeping other affairs of William Todd had been committed. The transfer of title was recorded. The lease, without being recorded, was retained by McCord, at the request of William Todd.

A few months later the marriage of William Todd and his housekeeper became a fact. Their only child is the plaintiff here.

In a proceeding to acquire lands for the Catskill aqueduct, the city of New York in 1908 condemned part of that half of the property which had been let to William Todd for his life by his nephews. An award of $5,500 made to the nephews as owners was paid through McCord, who was their attorney in the proceeding. At that time the wife of William Todd had heard nothing from him of the arrangement he had made with his nephews before his marriage. In her presence, a neighbor asked him where was his aqueduct money. He made no reply, but his wife took up the inquiry and was then apprised by him of the conveyance of November 10, 1906. The result was that William Todd and his wife demanded of McCord that the condemnation award be paid to them. She recounts a later interview as follows: McCord: " William, the Todd boys [defendants] are tighter than bark on a tree. All they will give you is the interest on the aqueduct money." William Todd: " I will not take it. I want my place and the aqueduct money." McCord: " William, the Todd boys will not give you back your place unless you make out a new deed and have your wife sign it. The Todd boys own the farm, the deed is in their name, and if you don't make out a new deed and sign it they will drive you off the place."

In this crisis, William Todd and his wife went for independent counsel to Charles N. Wells, who had been attor-

ney for other members of the Todd family. It is undisputed that thereafter, on more than one occasion, McCord made opportunities to confer with William Todd, and, in the absence of Wells, undertook to advise William Todd that he was not entitled to the farm or to the principal of the so-called aqueduct money, and that he should accede to the position of his nephews.

The upshot of numerous subsequent negotiations was that on May 19, 1909, William Todd received from his nephews $5,000 as the capitalization of his life interest in the moneys awarded to them in the condemnation proceeding. At the same time they reconveyed the farm property to him and he then and there granted it to them a second time by a deed, in which his wife joined, reserving a life estate in the parcel previously allocated by them to him. Concededly this compromise involved no actual consideration moving to William Todd. There was no change in the situation thenceforth to his death on June 7, 1925. His widow and their daughter, this plaintiff, then removed from the property at the behest of the defendants, the record owners.

This action was commenced five years later. Plaintiff, as sole heir at law of William Todd, has now successfully challenged his second conveyance to his nephews, that of May 19, 1909, as void for fraud and undue influence practiced by them upon him. Defendants, the grantees, appeal from a judgment which declares plaintiff to be owner of the property.

The Appellate Division has adopted a finding of the trial court that the first conveyance by William Todd to defendants, that of November 10, 1906, was procured by their fraudulent representation that they would hold the title in name only for his benefit and would restore it to him upon demand. Plaintiff argues that the fact so found stamps as a falsification McCord's advice to William Todd, prior to the settlement of May 19, 1909, that defendants were then absolute owners of the property;

that William Todd on May 19, 1909, adjusted his controversy with defendants in reliance upon that false denial of his actionable equitable right against them; and that the compromise of that date was for that reason voidable by him. With all this premised, the contention is that persistence of the erroneous belief so instilled by defendants was no more than acquiescence explained by the lasting compulsion of a fraud unknown to plaintiff until commencement of this action.

In our opinion there is no basis for such an approach to the case. We can discover nothing in the evidence to countenance a finding that the first conveyance by William Todd to defendants, that of November 10, 1906, was impeachable upon any ground. It is true that, antecedently that conveyance, defendants were solicitous lest their uncle's contemplated marriage should defeat their expectancy of inheritance from him. Equally is it plain that his delivery of that conveyance was begotten of his desire that the farm title be kept in the Todd name. The conclusion that, by force of those circumstances and nothing else, defendants on November 10, 1906, made themselves trustees for William Todd is mere conjecture. William Todd had reasons of his own for the family settlement of November 10, 1906. It was willingly initiated by him and was concluded in full agreement with his directions to a lawyer of his own selection. In his conduct respecting that arrangement nothing appears to have been involuntary, except perhaps his disclosure of the facts to his wife two years after the event. It follows that McCord's advice to William Todd that the conveyance of November 10, 1906, vested an indefeasible title in defendants was sound in fact and in law.

Both courts below have found that McCord also said to William Todd that, unless the deed of May 19, 1909, was delivered, defendants would eject William Todd and his family from the property. We must accept this

finding, for there is evidence contradictory of McCord's denial that he made any such statement repudiating the right of William Todd under the life lease given him by defendants on November 10, 1906. The trial court thought that so groundless a threat could not in the circumstances be regarded as in itself an imposition against which equity must afford relief even at this day. We are of that opinion. Another viewpoint is possible only, if for some reason not apparent, incompetence or corruption is imputed to Wells as attorney for William Todd. Wells knew of the life lease of half the property to William Todd by defendants on November 10, 1906. The writing which evidenced that interest was destroyed by McCord at the suggestion of Wells when on May 19, 1909, the deed reserving an equivalent life estate to William Todd was delivered. Wells was dead when the case was tried. Any inference that he was insensible to his professional trust is unwarranted.

The issue might be different had intimidation by McCord diminished any property right of William Todd; but the fact is that after May 19, 1909, all parties had exactly what they had before and none had received anything to which he was not legally entitled. There was no suppression of the facts of any cause of action which William Todd may have believed he could have maintained. After the first conveyance of November 10, 1906, defendants made use of so much of the farm as they had not set apart to their uncle, the grantor. They have paid their share of taxes upon the property from that time. During the sixteen-year period from May 19, 1909, to his death, no remonstrance came from William Todd.

The trial court was convinced that plaintiff's ancestor, although he may have conceived that it was perhaps his right to retract the earlier conveyance, chose to confirm it by the later one, and elected to abide by the relations thus established. We are disposed to think that this conclusion is in accord with the weight of the evidence.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division. The first question should be answered in the affirmative (*Piper* v. *Hoard*, 107 N. Y. 67; *Valentine* v. *Richardt*, 126 N. Y. 272), and the fifth question in the negative. Answers to the other questions certified are unnecessary.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and FINCH, JJ., concur.

Judgment accordingly.