AERATED PRODUCTS COMPANY OF BUFFALO, INC., Appellant, *v.* EDWARD S. GODFREY, JR., as Commissioner of Health of the State of New York, Respondent.

Argued December 9, 1942; decided March 4, 1943.

*Irving G. Hubbs, Howard R. Sturtevant, James M. Hengst* and *Mark N. Turner* for appellant.

*John J. Bennett, Jr., Attorney General (F. R. Chant* and *Hugh Reilly* of counsel) for respondent.

LEWIS, J. Upon the decision of an official referee, to whom were referred for hearing and determination the issues in this case, the plaintiff was granted a declaratory judgment which determined that the plaintiff's product, " Instant Whip ", is not a milk product, as defined by Regulation 1 of Chapter 3 of the State Sanitary Code, and accordingly that it was not subject to regulation under the Public Health Law. The declaratory judgment further determined that " Instant Whip " is a manufactured food product, within the classification of " frozen desserts mix," under article 4-A, section 71-a, subdivision 9, of the Agriculture and Markets Law, and as such is subject to regulation under the provisions of the latter statute. The Appellate Division reversed the judgment of Trial Term on the law and facts and dismissed the complaint. To that end it reversed and disapproved certain findings of fact and conclusions of law by the official referee and made new findings of fact as follows: " Instant Whip is a milk product. Its preparation and sale are subject to regulation under the Public Health Law." Asserting that the judgment of reversal entered upon

the order of the Appellate Division is erroneous, the plaintiff has appealed therefrom as of right.

In those circumstances this court has jurisdiction to review the facts found by the Appellate Division and its decision thereon and, with appropriate respect for the findings of the trial court, we may ascertain whether the decision by the Appellate Division was in accord with the weight of evidence. (State Const. art. VI, § 7; Civ. Prac. Act, former § 589, subd. 2 [as amd. L. 1926, ch. 725]; *York Mortgage Corp.* v. *Clotar Constr. Corp.*, 254 N. Y. 128, 131–134; *Forstmann* v. *Joray Holding Co.*, 244 N. Y. 22, 28, 29; *Matter of Flagler*, 248 N. Y. 415, 420.)

The plaintiff, a New York corporation, having its principal place of business at Buffalo, is licensed by Æration Process, Inc., an Ohio corporation, to manufacture and sell "Instant Whip." That product — made by a patented process — consists of pasteurized cream to which are added sugar and enough vanilla to flavor the mixture. After seven ounces of the mixture have been placed in a sterilized metal container, the air is withdrawn by a vacuum pump and replaced by seven grams of nitrous oxide gas. The nitrous oxide, which is conceded to be harmless to health, is introduced into the container at a pressure of one hundred and fifty pounds. One-half of it, upon agitation, permeates the cream and sugar mixture thus creating the quality of foaminess which characterizes whipped cream. The remaining gas in the container exerts upon the mixture enough pressure to produce exudation when the outlet valve in the container is released. The product itself is used to garnish pastry, sundaes, soda fountain drinks and for those other purposes in which whipped cream is ordinarily employed.

We accept it as a fact — found by the referee upon ample evidence and not reversed by the Appellate Division — "That 'Instant Whip,' due to its being processed and placed in sealed containers and thereafter kept in cracked ice, can be kept for relatively long periods of time, and belongs, economically, in the surplus commodity class such as ice cream and frozen desserts mix." As such it is subject to rules and regulations promulgated and enforced by the Commissioner of Agriculture and Markets under sections 71-h and 71-k of the *Agriculture and Markets Law*. Such rules and regulations relate to the sanitary condition of buildings where "Instant Whip" is

manufactured; the sanitary condition of persons in direct physical contact with the product itself during manufacture; the sanitary condition of all equipment used in its manufacture and the containers in which it is shipped and of the premises and equipment where it is sold. (See § 71-k *id* and Rules and Regulations [Circular 592 filed in 1940 pursuant thereto].)

In the manufacture, sale and distribution of " Instant Whip " the appellant holds a license issued by the Commissioner of Agriculture and Markets which authorizes it to purchase cream for purposes of manufacture only. It has conformed strictly with the rules and regulations mentioned above and by doing so it has produced and continues to produce a product which, as we shall see, is a nutritive, wholesome and palatable food product which is in no way injurious to health. There came a time, however, after July 1, 1939, when the appellant found itself involved in a controversy with local and State health authorities which prompted the present action wherein demand is made for a declaratory judgment. That controversy arose in the following circumstances:

The State Sanitary Code has the force and effect of law by reason of provisions of the Public Health Law (§§ 2-b and 2-c). It embodies sanitary regulations established by the Public Health Council with the approval of the Commissioner of Health. These regulations " deal with any matters affecting the security of life or health or the preservation and improvement of public health in the state of New York * * *." (Public Health Law, § 2-b.) Among matters affecting public health which are regulated by the Sanitary Code are the sale and distribution of " milk products." In the present case it seems to be conceded that, as administered prior to July 1, 1939, the Sanitary Code did not include " Instant Whip " within the classification of " milk products." Prior to July 1, 1939, the manufacture and sale of " Instant Whip " had been and still is, as we have seen, subjected to rules and regulations promulgated and enforced by the Commissioner of Agriculture and Markets under sections 71-h and 71-k of the Agriculture and Markets Law. However, on April 14, 1939, the Public Health Council amended the Sanitary Code to be effective July 1, 1939, by adding to the definition of " milk products " the clause " cream to which any substance has been added and for use in

fluid state or whipped." Indeed, the brief filed by the respondent, the State Commissioner of Health, concedes that " this amendment was made to bring plaintiff's product ' Instant Whip ' within the definition of a milk product."

Following the amendment in 1939 of the definition of milk products as contained in the Sanitary Code, demands were made by certain health department officials upon the appellant which required that in its manufacture, sale and distribution of " Instant Whip " it conform to those provisions of the Sanitary Code which are applicable to the production and distribution of milk products. Those demands include the requirement that if " Instant Whip " is to be sold in a certain community it must be manufactured in a local plant and must use only cream procured from local sources and inspected by appointees of the local commissioner of health. The appellant claims that the output of one plant is sufficient to produce a supply of " Instant Whip " adequate for several cities and that it would be both impractical and uneconomical to require the maintenance of a plant within each community where " Instant Whip " is sold. Resisting the demands thus made upon it and in an effort to secure legal confirmation of its position in the controversy thus engendered the appellant instituted the present action for a declaratory judgment in which, as already indicated, a decision in the court of original jurisdiction favorable to the present appellant, has been reversed at the Appellate Division.

Our attention is directed by the Commissioner of Health to the fact that in connection with the manufacture and use of each container in which " Instant Whip " is sold the appellant employs a valve which is threaded into the container and is the device used to release the contents. In that valve is a spring which is not demounted in the cleansing process to which each container is subjected after use. It is said by the respondent that the presence of the threaded opening and the spring " *offers* an ever present source of *possible* contamination." But there is no evidence that contamination in any instance has escaped the cleansing process to which the container was subjected and has caused harm to a user of the product. The respondent also invites attention to the fact that, in preparing " Instant Whip " for distribution, instead of using a mechanical

method to cap each container, that particular operation is manually performed — the suggestion being that there is thus presented "a second menace to health through the contamination of the product." But again there is a total lack of evidence of such contamination. And more important to our inquiry upon this branch of the problem is the finding of fact made by the referee and not disturbed by the Appellate Division — "That the methods employed by plaintiff for cleaning the containers do in fact clean said containers *in all their parts, and render the containers and all their parts clean, sanitary and sterile.*" (Emphasis supplied.)

There are other findings of fact made by the referee and not reversed by the Appellate Division which bear upon an important question which underlies the determination of this appeal — whether "Instant Whip" may be dispensed with entire safety to public health when regulated as to manufacture and distribution by the rules enforced by the Commissioner of Agriculture and Markets. Those undisputed findings of fact are:

"14. That all of the ingredients of 'Instant Whip' are clean and wholesome, and that the nitrous oxide gas as used is utterly harmless.

"15. That the product 'Instant Whip' is a nutritive, wholesome and palatable food product, and is in no wise dangerous, harmful or injurious to the health of the person eating the same.

"16. That plaintiff's processes in the manufacture and distribution are carried on in a safe and sanitary manner, and under clean and sanitary conditions.

"18. That 'Instant Whip' marks a scientific and sanitary advance over ordinary whipped cream.

"19. That 'Instant Whip,' due to its being processed and placed in sealed containers and thereafter kept in cracked ice, can be kept for relatively long periods of time, and belongs, economically, in the surplus commodity class such as ice cream and frozen desserts mix.

"20. That in none of the States or communities outside of New York State where 'Instant Whip' is sold, are the licensees of Æration Processes, Inc., manufacturing and distributing

' Instant Whip ' required to comply with the same requirements as are imposed upon fluid milk and cream.''

There is in the record before us substantial evidence to support each of the findings of fact quoted above which stand unreversed by the Appellate Division. Accordingly we must treat those findings, in so far as they relate themselves to our problem, as statements of established facts upon which our decision may rest. (*Forbes* v. *Todd*, 266 N. Y. 384, 388-390.)

We are mindful that the Sanitary Code has the force and effect of law when it deals '' with any matters affecting the security of life or health or the preservation and improvement of public health '' within the State. (Public Health Law, § 2-b.) We also have in mind the rule of law that we may declare invalid the amendment to the Sanitary Code here challenged, '' only in the event that it is so lacking in reason for its promulgation that it is essentially arbitrary.'' (*Matter of Stracquadanio* v. *Dept. of Health*, 285 N. Y. 93, 97.) A statement by Mr. Chief Justice HUGHES in *Borden's F. P. Co.* v. *Baldwin* (293 U. S. 194 at pp. 209, 210), is quite as appropriate here — '' The principle that the State has a broad discretion in classification, in the exercise of its power of regulation, is constantly recognized by this Court. Still, the statute may show on its face that the classification is arbitrary * * * or that may appear by facts admitted or proved.'' Here we view the amendment to the Sanitary Code adopted on April 14, 1939, effective July 1, 1939, in the light of the concession made by the Commissioner of Health in his brief filed as respondent upon this appeal — *viz.*, that such amendment '' * * * was made to bring plaintiff's product ' Instant Whip ' within the definition of a milk product.'' That concession when considered against the background of facts disclosed by material findings by the courts below, which we may not disregard, leads us to conclude that the amendment here in question as applied to the manufacture, sale and distribution of appellant's product '' Instant Whip,'' is unreasonable, discriminatory and arbitrary and denies to the appellant the equal protection of the laws and due process of law guaranteed to it as constitutional rights. (Federal Constitution, Amend'ts V and XIV, § 1; State Constitution, art. I, §§ 6, 11.)

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed with costs in this court and in the Appellate Division.

FINCH, J. (dissenting). The principal ingredient and bulk of this product, "Instant Whip" is fluid cream to which nitrous oxide is added under pressure; also small quantities of sugar and vanilla are added. This operation is an efficient means of producing whipped cream in large quantities and keeping the cream in containers while being shipped for long distances in interstate commerce. This product has substantially the same food value as cream whipped in a different manner. Outside of the container it is as contaminable as cream. Aside from the nitrous oxide, there is no substantial chemical difference between this product and ordinary cream. The fact that the product may be used as an attractive and delectable dressing to frozen desserts and may belong economically in the surplus commodity class, does not rebut the finding of the Appellate Division that the product is a milk product and properly regulated pursuant to the Sanitary Code. Whether this product should remain subject to regulation as to its manufacture and sale only as required under the Agriculture and Markets Law (§§ 71-h and 71-k) or whether it is vital to health that the source also of the fluid cream should be subject to inspection and control, lies within the determination of the Commissioner of Health who is charged with safeguarding the health of the community. It cannot be gainsaid that supervision at the source affords greater safety to the public than mere supervision of the manufacture and sale. If classified under the State Sanitary Code, the product would be subjected to the same safeguards of health that are placed about the production and sale of milk products generally. The plaintiff admits that under the Agriculture and Markets Law it has purchased cream at will from uninspected sources outside of the State. The Public Health Council is a board of nine members, eight of whom are appointed by the Governor and the State Commissioner of Health is a member *ex officio*. This Council enacts the Sanitary Code subject to the approval of the Commissioner of Health. This Public Health Council amended the State Sanitary Code on April 14, 1939 by adding to the

definition of milk products '' cream to which any substance has been added and for use in fluid state or whipped.'' This amendment was made to bring the product of the plaintiff within the definition of a milk product.

In view of the evidence supporting the reasonableness of the classification as a milk product, the regulation and supervision of its product and manufacture under the Sanitary Code in a manner employed for milk products generally cannot be said to be unreasonable, much less arbitrary and capricious.

The judgment of the Appellate Division should be affirmed.

LOUGHRAN, RIPPEY and CONWAY, JJ., concur with LEWIS, J.; FINCH, J., dissents in opinion in which DESMOND, J., concurs; LEHMAN, Ch. J., taking no part.

Judgment accordingly.