THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDITH C. MAC-CRACKEN, Respondent, against WILLIAM S. MILLER et al., as Commissioners of Taxes and Assessments of the City of New York, Appellants.

Argued May 17, 1943; decided July 20, 1943.

*Robert H. Schaffer, Acting Corporation Counsel (Arthur A. Segall, Arthur H. Goldberg* and *Edmund B. Hennefeld* of counsel), for appellants. The Appellate Division erred in giving controlling weight to the sale of the property in suit and to the eighteen similar mansion sacrifice sales and the valuation opinion of the relator's expert founded on those sales. The conditions of those sales were plainly repugnant to the statutory standard of " ordinary circumstances " and the prices realized could not possibly represent the " full value " which is the only proper basis for tax valuation. (*Matter of Board of Water Supply of New York,* 277 N. Y. 452; Administrative Code, [L. 1937, ch. 929] § 155b-1.0; *People ex rel. Parklin Operating Corp.* v. *Miller,* 287 N. Y. 126.) The Trial Justice properly refused to give controlling weight to the sacrifice sales. When all the evidence and factors of value in the case are weighed,

it is evident that the Trial Justice's original findings of value were fully in accord with the weight of the evidence. The finding of value by the trier of the facts should not have been disturbed by the Appellate Division. (*People ex rel. Parklin Operating Corp.* v. *Miller*, 287 N. Y. 126; *Commercial Casualty Ins. Co.* v. *Roman*, 269 N. Y. 451; *People ex rel. Third Ave. R. R. Co.* v. *Tax Commrs.*, 212 N. Y. 472.) The 1939–40 grievance application was jurisdictionally defective for failure to " specify clearly the objection " to the assessment " and the grounds for such objection " (Charter § 163). Accordingly, the courts below should have dismissed the 1939–40 proceeding as erroneous as a matter of law. (*Oliner* v. *American-Oriental Banking Corp.*, 282 N. Y. 588, 282 N. Y. 748; *Matter of Van Vliet*, 224 N. Y. 545; *Sikora Realty Corp.* v. *City of New York*, 262 N. Y. 312; *People ex rel. 2440 Concourse, Inc.*, v. *Miller*, 178 Misc. 1038, 261 App. Div. 948, 285 N. Y. 862; *People ex rel. Champlin* v. *Gray*, 185 N. Y. 196; *People ex rel. Masonic Hall Assn.* v. *White*, 218 App. Div. 38, 244 N. Y. 564; *People ex rel. Irving Trust Co.* v. *Miller*, 264 App. Div. 270; *People ex rel. N. Y. C. R. R. Co.* v. *Goldfogle*, 93 N. Y. L. J. 2783, 248 App. Div. 864, 273 N. Y. 681; *People ex rel. Laurelton Development Co.* v. *Purdy*, 190 App. Div. 957.) The Appellate Division may not substitute its finding of value for the original finding of the Trial Justice unless such latter finding is contrary to the weight of the credible evidence. The Appellate Division may not modify such a finding merely because it concludes that had it been the trial court, it would have found a different value. (*Matter of City of New York* [*Newtown Creek*], 284 N. Y. 493; *Boyd* v. *Boyd*. 252 N. Y. 422; *York Mortgage Corp.* v. *Clotar Constr. Corp.*, 254 N. Y. 128; *Smith* v. *Smith*, 273 N. Y. 380; *Baird* v. *Mayor*, 96 N. Y. 567; *Sanger* v. *French*, 157 N. Y. 213; *Crane* v. *Baudouine*, 55 N. Y. 256; *Westerlo* v. *DeWitt*, 36 N. Y. 339; *Foster* v. *Bookwalter*, 152 N. Y. 166; *Devlin* v. *Greenwich Sav. Bank*, 125 N. Y. 756; *Nugent* v. *Metropolitan St. Ry. Co.*, 46 App. Div. 105; *Schargel* v. *United Electric L. & P. Co.*, 127 Misc. 24; *Adamson* v. *Gilliland*, 242 U. S. 350; *People ex rel. Hilton* v. *Fahrenkopf*, 279 N. Y. 49.)

*William H. King* and *Herbert Whyman* for respondent. The Court of Appeals does not have jurisdiction to hear the appeal

insofar as the same seeks to review the unanimous affirmance by the Appellate Division of the denial by the Special Term of the defendants' motion made at the trial to dismiss the 1939-40 proceeding for a jurisdictionally defective protest application. Instead of dismissing the 1939-40 proceeding as requested by the defendants, the Appellate Division denied their claim by unanimously directing greater reduction of the assessment for that year as well as for 1940-41. It thus unanimously affirmed the Special Term's denial of their motion to dismiss the 1939-40 proceeding. An appeal to the Court of Appeals from such unanimous affirmance could properly be taken only pursuant to the provisions of subdivision 5 of section 588 of the Civil Practice Act. Herein no such certificate was made by the Appellate Division nor did the Court of Appeals allow an appeal. (*Matter of City of New York* [*White Plains Road*], 224 N. Y. 454; *Matter of Van Vliet,* 224 N. Y. 545; *Werner* v. *City of New York,* 229 N. Y. 566; *Oliner* v. *American-Oriental Baking Corp.,* 282 N. Y. 588.) The preponderance of the competent credible evidence clearly showed gross error in the Special Term's valuations and fully justified the modified findings of value by the Appellate Division. (*People ex rel. Loeser & Co.* v. *Goldfogle,* 249 N. Y. 284.) The application to the Tax Commission for correction of the 1939–40 assessment adequately showed that the ground of objection was overvaluation and the application was not jurisdictionally defective. (*People ex rel. Irving Trust Co.* v. *Miller,* 264 App. Div. 270.)

LEHMAN, Ch. J. In March, 1939, the relator purchased a private dwelling at 1025 Fifth Avenue for the sum of $137,500, paid in cash. The dwelling had been erected in 1907 by a man of great wealth upon a plot forty feet wide, and was occupied by him until his death in June 1938. After his death the property was transferred to his legatee, who did not desire to occupy it. For the year 1939–40 the property was assessed at $280,000; land $230,000, building $50,000. For the year 1940–41 the property was assessed at $260,000; land $210,000, building $50,000. Applications were filed for the correction of the assessment in both years and, after denial of the applications, certiorari proceedings were commenced to review the assessments. At the hearing in Special Term, witnesses, qualified as experts, were

produced by each side and they expressed strongly divergent opinions as to the value of the property. The trial court reduced the assessment for the year 1939–40 to $238,000; land $198,000, building $40,000; and for the year 1940–41 reduced the valuation of the building an additional $2,000. The Appellate Division reduced the assessment for each year to $145,000; land $120,000, building $25,000.

Three companion cases in which the Appellate Division reversed findings of the court at Special Term in certiorari cases to review tax assessments were argued in this court on the same day and are decided herewith. (*People ex rel. Prudential Ins. Co.* v. *Lilly*, 291 N. Y. 600; *People ex rel. Chemical Bank & Trust Co.* v. *Miller*, 291 N. Y. 507; *People ex rel. Bryant Park Building, Inc.*,v. *Miller*, 291 N. Y. 528.) In all these cases the city has urged that " the Appellate Division may not substitute its finding of value for the finding of the Trial Justice unless the latter finding is clearly contrary to the weight of the credible evidence " citing *Matter of City of New York (Newtown Creek)*, (284 N. Y. 493). We find no authority in the cited case or in other cases decided by this court for any differentiation in the powers of the Appellate Division to review and set aside findings of value by the Special Term in a certiorari proceeding and its powers to reverse findings of fact made by Special Term in other special proceedings or actions.

This court has pointed out that in certiorari proceedings the judicial tribunal must " deal with the testimony as courts deal with evidence, and not in the manner of mere administrative tribunals like a board of tax commissioners." In such proceedings " new evidence is taken which, by command of the statute, the court was bound to consider in making its determination. In other words, it was the duty of the court to retry the questions of fact and decide them over again, and whether its findings were written out or left to necessary implication, there is no escaping the conclusion that the facts are conclusively presumed to have been decided *de novo*." (*People ex rel. Manhattan Ry. Co.* v. *Barker*, 152 N. Y. 417 at p. 431. See, also, *People ex rel. Thomson* v. *Feitner*, 168 N. Y. 441 at p. 457; *People ex rel. Jamaica W. S. Co.* v. *State Board of Tax Commrs.*, 196 N. Y. 39, at pp. 49 and 50.) The Appellate Division has a general power to review findings of fact made by the trial

court and must render "final judgment * * * according to law, except where it may be necessary or proper to grant a new trial or hearing." (Civ. Prac. Act, § 584.) No provision of the Civil Practice Act, the Tax Law, or the Administrative Code of the City of New York (L. 1937, ch. 929) imposes any express limitations upon this general power when the Appellate Division reviews findings of value made *de novo* by the court at Special Term in certiorari proceedings. Where upon such review the Appellate Division reverses the findings of value made by the court at Special Term and makes new findings of fact, the Court of Appeals must choose between the findings of the Special Term and the new findings of the Appellate Division in the same manner as if the findings had been made in some other proceedings or actions. We must then at times appraise the relative weight of conflicting testimony and render judgment upon those findings which we determine "are in accord with the weight of the evidence." (*People ex rel. Hilton* v. *Fahrenkopf*, 279 N. Y. 49, at p. 53.)

The test that should be applied in reviewing findings of value is not different from the test which should be applied in reviewing other findings of fact. In all cases the appellate court in appraising the weight of evidence must recognize that its power to reverse a finding of the trial court is not unlimited, and that the Trial Judge who has seen and heard the witnesses and has opportunity to question them and to guide the course of the trial, has often an advantage over the Appellate Judge who must reach his conclusion upon the written record alone. So this court has pointed out that, however broad may be the statutory grant of power to the Appellate Division to determine an appeal upon the merits both as to matters of law and fact, its "power to reverse a finding of fact may be exercised only in accordance with the general rules of law regulating appeals to that court. It may not set aside a finding of value made at Special Term, unless such finding is based upon erroneous theory of law or erroneous ruling in the admission or exclusion of evidence, or *unless it appears that the court at Special Term has failed to give to conflicting evidence the relative weight which it should have* and thus has arrived at a value which is excessive or inadequate." (Italics are new.) (*Matter of City of New York* [*Newtown Creek*] *supra* at p. 497.) Where the

Appellate Division reviews a finding of fact its inquiry is not confined to an examination of whether the finding is supported by some credible evidence, if it appears that upon *all* the credible evidence a different finding would not have been unreasonable. Then the Appellate Division must, like the court at Special Term, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony. The opinion in *Matter of City of New York* (*Newtown Creek*) (*supra*) is misread if it is accepted as authority for a narrower definition of the power of the Appellate Division. Where men may reasonably differ, choice is determined by individual judgment, and an exercise of such judgment is, under the law of this State, subject to review by an appellate court. That is why the law of this State confers upon the Appellate Division power to review questions of fact as well as questions of law and has conferred upon this court power to review questions of fact where the Appellate Division makes new findings of fact and grants final judgment thereon. In such case " we are to search the record and, with appropriate respect for the findings of the trial court, are to review the facts found by the Appellate Division. (*York Mortgage Corp.* v. *Clotar Constr. Corp.*, 254 N. Y. 128, 134.) " (*Forbes* v. *Todd*, 266 N. Y. 384, 386).

The expert witnesses produced by the parties have, as we have said, expressed opinions of value which vary widely. Sales of similar property before 1929 and a few sales since that date were made at prices as high or higher than the value found by the court at Special Term; and the cost of reconstructing the dwelling, erected in 1907, would be far greater than the value placed by Special Term upon the improvement. On the other hand, since 1929 such private dwellings have been seldom if ever erected, and are not sought by purchasers for occupancy. Nor is there any reasonable probability that such dwellings will again be sought for occupancy. The sale of the property in 1939 for $137,500 was made by a wealthy owner to a purchaser interested in contiguous property held for sale or improvement. Doubtless the owner was willing to accept the price because she did not wish to occupy the dwelling and saw no prospect of obtaining a higher price at that time, and did not believe that it would be profitable to hold the property,

paying the taxes thereon, until a higher price could be obtained. Other owners of real property were willing sellers for the same reasons. Doubtless, too, the buyer would not have bought the property if she had not foreseen a profit from her investment. That she was perhaps in a better position than other possible buyers to realize a profit might cast doubt upon the probative force of the sale to establish that a price as high could have been obtained from other ready buyers; it does not diminish its probative force to establish that a seller under no economic compulsion to sacrifice the property for an inadequate price was willing to sell at the price actually paid and that no buyer was ready to pay a higher price. A very considerable number of sales of similar property made within a few months at comparable prices are evidence that willing sellers found buyers ready to pay a price based upon the probability of future profit from the investment, but found few if any ready buyers who would pay a higher price to obtain the property for immediate use. Choice between opposing opinions is dictated by appraisal of the relative weight of conflicting considerations, and a trial court is in little better position than the appellate court to make the appraisal. Since it does not appear that this condition is due to temporary causes the finding of value by the Appellate Division which accords with expert opinion supported by actual sales is not against the weight of evidence.

One other question remains. The application to the Tax Commission for the correction of the assessed valuation of the property for the year 1939–40 was made on a blank furnished by the city and was signed by the seller of the property who then held its record title. The statute requires that the application for the correction of an assessment shall " specify clearly the objection thereto and the grounds for such objection." (New York City Charter [1938], § 163. See, also, Tax Law, § 27.) A motion by the city, made at the trial, to dismiss the proceeding to review the tax assessment on the ground that the application failed to specify the objection and its grounds, was denied at Special Term. The city now urges that the application is jurisdictionally defective.

We assume that the court cannot review the assessed valuation of real estate unless previous application for the correction of such valuation has been made to the Tax Commission in

accordance with the statute, and that the Tax Commission might disregard as a futile gesture an application which fails to specify clearly the grounds of objection. The printed forms of application furnished by the city to aggrieved owners of property in 1939 contain the following questions, which were calculated to elicit the information required by the statute: " Is the objection based on the valuation of the land or the building? " " Is the objection based upon any inequality? If so, give particulars." " Is the objection based on illegality? If so, give particulars or add separate sheet." These questions were not answered by the owner, who executed and filed the application in 1939 in this case. The owner did, however, fill in the blank space for a statement of the assessed valuation as follows: " Land $230,000, total $280,000." The printed forms, immediately after the space left for a statement of the assessed valuation, contain the question: " What do you consider was the fair value of the property on January 25th this year? " In answer to that question the protesting owner stated in the appropriate space: " $137,500." We need not now decide whether such answer would as matter of law constitute a sufficient specification of the objection of the owner that the real property taken as a whole was overvalued, for it appears beyond dispute in this case that the Tax Commission regarded the application as a sufficient statement of such objection and then overruled the objection. Since the application *as executed* gave to the Tax Commission the information required by the statute, the city cannot now be heard to object to the sufficiency of the specification of objection.

The order should be affirmed, with costs.∎

LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur; THACHER, J., taking no part.

Order affirmed.