David L. Malbin, M.
The defendant was tried before me on two complaints charging violations of the milk-dating regulations promulgated by the commissioner of health of the City of New York pursuant to the authority contained in chapter 22 (§ 551 et seq.) and section 885 of the New York City Charter.
The first complaint charged the defendant with having in its possession for sale a quantity of milk in quart size containers improperly labeled, in that the day of the week on which distribution might begin was stated on the containers as a day *498 more than 36 hours after pasteurization, in violation of regulation 155 (subd. 4) of section 156 of the Sanitary Code of the City of New York. The second complaint charged the defendant with having in its possession for the purpose of sale heavy cream in half-pint containers, which were not labeled with respect to the date on which distribution might begin.
The evidence and concessions of the parties established that the defendant committed the acts set forth in the complaint. The additional fact pertinent to the legal questions hereinafter discussed was established that the milk was destined for distribution to automatic vending machines. Counsel for the defendant and for the amicus curice have posed grave constitutional questions in asserting the validity of the regulations involved. The court takes this occasion to express its appreciation to counsel for their skill and zeal in the presentation of their arguments.
Regulation 154 of section 156 provides in part as follows:
‘ ‘ 1. Each receptacle containing milk or milk products * * * brought into the City of New York, or held, kept, offered for sale or sold therein, shall bear a label on which there shall be clearly and legibly printed the nature of the product contained in said receptacle, the name of the operator of the place where said receptacle was filled, and the address of said place, together with any additional information required in the Sanitary Code and in these regulations governing milk and milk products ”.
Regulation 155 (subd. l[c]) of section 156 provides: “ The time when distribution of the milk or cream indicated by the words ‘ for distribution after 3 A.M.’ or ‘ for distribution after 6 A.M/ together with the day of the week, in the ease of caps and single service containers, and with the date in the case of tags ”.
Subdivision 4 of regulation 155 of section 156 provides:
‘ ‘ The time when distribution may begin, as indicated on the outer caps on bottles, the tags attached to cans and the labeling-on single service containers of milk or cream shall not be more than thirty-six (36) hours after pasteurization of such products. ’ ’
Regulation 51 of section 156 provides in part as follows: nor shall it be lawful to have, keep, offer for sale, sell or deliver any millr * * * later than fifty-four (54) hours or ‘any cream * * * later than seventy-two (72) hours after 3 A.M. or 6 A.M. of the day or the date when distribution may begin as indicated on the single service containers ’ ’.
Subdivision 8 of regulation 155 of section 156 provides that the dating requirements shall not apply to one-third quart or *499 one-half pint containers or bottles when snch containers or bottles are dispensed through mechanically operated dispensing machines.”
These regulations comprise an integrated pattern designed to insure that milk will not be sold to the consumer more than 90 hours after pasteurization and cream more than 108 hours after pasteurization. The apparent and undisputed purpose of these regulations is to protect the health of the residents of the City of New York by banning the sale of stale milk or cream. The principal attack leveled against these regulations is that they do not in fact serve any health purpose. The argument is made that with advances in methods of refrigeration milk and cream may be wholesome even if it is kept beyond the period permitted by the regulations. The argument proceeds that the quality of milk is not determined solely by its age but is dependent also upon the conditions under which it is kept. The proper judicial approach to this problem is set forth in Defiance Milk Prods. Co. v. Du Mond (309 N. Y. 537, 540-541): “ The applicable rules of law are well known. Every legislative enactment carries a strong presumption of constitutionality including a rebuttable presumption of the existence of necessary factual support for its provisions * *. If any state of facts, known or to be assumed, justify the law, the court’s power of inquiry ends * * *. Questions as to wisdom, need or appropriateness are for the Legislature * * *. Courts strike down statutes only as a last resort * * * and only when unconstitutionality is shown beyond a reasonable doubt ”.
The rule was tersely stated as follows by the United States Supreme Court in Carolene Prods. Co. v. United States (323 U. S. 18, 31-32): “ the methods which it [the Board of Health] employs to carry out its purposes are beyond attack without a clear and convincing showing that there is no rational basis for the legislation; that it is an arbitrary fiat.”
Judged by these standards, there is no escape from the conclusion that the regulations are a proper exercise of a legislative function. Counsel for the defendant evidencing diligent research has presented the court with cogent arguments in support of the defendant’s position that the regulations do not in fact serve a health purpose. The authorities above cited established that this court’s function is not to appraise the merits of the regulation but to determine merely whether there is ‘ any rational basis ’ ’ for the conclusion that they serve a health purpose. To say that the quality of the milk is dependent upon two factors, age and refrigeration, is not to negate that *500 the rigid regulation of one of the factors, to wit, its age, does not serve a health purpose. The regulation of the age factor may not necessarily insure the quality of the milk in all cases but it certainly has a tendency in that direction. That the effect of the enforcement of the regulation may in some cases ban the sale of wholesome milk does not vitiate the regulation. The line must be drawn somewhere, and if the regulation is to serve the desired purpose, it must be drawn with that degree of caution which will insure its fulfilment. In fixing the period of time beyond which milk is deemed not to be fresh, the board of health must strike a balance between the interests of the milk consuming public and the vendors of milk. In such a conflict of interest between the health needs of the public and the property rights of the vendors, this court recognizes the rights of the public to be paramount and will not strike down the regulations on the basis of an allegation that the balance has not been sufficiently delicately struck. The court does not reject the findings of scientific experts in the milk field which have been called to its attention by defense counsel, but rather, finds that the question of the efficacy of milk dating is a controversial one. The court has the right to take judicial notice of the common belief of the people (Richardson on Evidence [8th ed.], § 44). The court takes judicial notice of the fact that there is a common belief that milk-dating serves a health purpose.
The common belief of the people forms an adequate basis for legislation. In Matter of Viemeister v. White (179 N. Y. 235) the Court of Appeals sustained the constitutionality of a regulation requiring vaccination based upon the common belief that it was a preventative of smallpox. When this decision was rendered in 1904, there was respectable medical authority, as noted by the court in its opinion, to support the contention that vaccination did not serve such purpose. The court wrote as follows (p. 241):
“ The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by every one. The possibility that the belief may be wrong and that science may yet show it to be wrong is not conclusive, for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases. In a free country where the government is by the people through their chosen representatives, practical legislation admits of no other standard of action, for what the people believe is for the common welfare must be accepted as tending to promote the common welfare, whether it does in fact or not. Any other basis would conflict with the spirit *501 of the Constitution and would sanction measures opposed to a republican form of government.
‘ ‘ While we do not decide and cannot decide that vaccination is a preventative of smallpox, we take judicial notice of the fact that this is the common belief of the people of the state, and with this fact as a foundation, we hold that the statute in question is a health law, enacted in a reasonable and proper exercise of the police power.”
It takes but the change of the word “ vaccination ” to “ milk-dating ” in the above-quoted language to bring home its application to the present case.
The next contention advanced by the defendant is that the regulation is unconstitutional in that it unreasonably discriminates between milk sold in stores and elsewhere and milk sold in mechanically operated dispensing machines. No doubt the courts have the power to declare laws containing unreasonably discriminatory provisions unconstitutional. (People v. Kuc, 272 N. Y. 72; Aerated Prods. Co. of Buffalo v. Godfrey, 290 N. Y. 92; Cowan v. City of Buffalo, 247 App. Div. 591.)
The court finds that there is a reasonable basis for discrimination in favor of milk sold in vending machines. It has been called to the court’s attention by the corporation counsel, and the fact is not disputed that the vending machines are so constructed that the oldest supplies in the dispensing machine are automatically dispensed first. Human error prevents the same result with respect to the milk sold in stores, absent dating requirements. The vending machines further offer the additional advantage of continued refrigeration during the storage period, a result not so readily assured in other types of sales. The possibility of milk deteriorating in a vending machine no doubt exists because mechanical failure of refrigeration may exist if it is coupled with a sufficiently long interval for the sale of the contents of the machine, but it was clearly within the legislative function to decide that the danger to health from milk sold in vending machines was sufficiently less acute to give it preferential treatment over milk sold otherwise.
The last contention of which the court deems it necessary to take note is that the regulation is unreasonably discriminatory in that the exemption with respect to vending machines applies only to one-half pint and one-third quart sizes, and not to larger sizes. Here again it is apparent that the discrimination has a rational basis. Milk and cream in the small sizes exempted from the regulation are likely to be consumed in a short period of time after purchase, whereas if purchased in larger quantities there is an additional danger of deterioration *502 resulting from the lengthened period from purchase to consumption.
The court has concluded that the defendant has violated the regulations herein; and that its guilt has been established beyond a reasonable doubt.