■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT PADGETT, Appellant. [595 NYS2d 484] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (O'Dwyer, J.), rendered September 23, 1991, convicting him of robbery in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the facts, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

The defendant and his codefendant were convicted of robbing the complainant of $29 on a Far Rockaway street corner in the early evening hours of April 3, 1991. In sustaining its burden of proof, the People relied primarily upon the testimony of two witnesses: the complainant, a mildly retarded man who suffers from an apparent paranoid condition and who manifested a hypersensitivity to the approach by strangers, and an auxiliary police officer who is a community volunteer and purportedly witnessed the encounter between the defendant and his codefendant and the complainant.

The complainant's testimony evinced that the defendant and his codefendant approached him in search of a video cassette recorder remote control which the complainant admittedly had stolen from the defendant's stepfather. After the complainant rebuffed the defendant's attempt to retrieve the remote control, the defendant requested money from the complainant. The complainant testified that he was "really scared" of the defendant and his codefendant and thought they had "a weapon", although none was hinted at or displayed. Moreover, according to the complainant, the codefendant Thomas, who stood outside the complainant's field of peripheral vision, made a slapping sound to accentuate the defendant's request for money. Although the complainant could not see how the sound was being made, he believed that Thomas had smacked his fist into his palm. The stated basis for this hypothesis was that Thomas had a "mean look" on his face when he had approached the complainant. Consequently, the complainant, who believed he was being robbed, removed his wallet, and, handing $29 to Thomas, said: "[h]ere, take it". According to the complainant, after the defendant and Thomas walked away, he ran, crying, to two nearby auxiliary police officers, including one Kenneth Burden, who had been "walking down the street". Given the complainant's psychiatric condition and the nature of the questions posed by the defendant and his codefendant, we find it more likely than not that the complainant was being asked to pay for the remote control which he admits he stole. The complainant's testimony does not convince this Court that he handed over his money under threat of force.

While the complainant has consistently maintained that neither the defendant nor the codefendant touched him dur-

ing the subject encounter, auxiliary police officer Kenneth Burden, who purportedly witnessed the entire incident, testified to the contrary. Indeed, Burden testified that while standing in front of the police station he observed, two storefronts away, the defendant holding the complainant around the waist while Thomas rifled through his pockets. Moreover, Burden further testified that he watched as Thomas removed the contents of the complainant's wallet and tossed it back to him. The crying complainant thereupon came running over to the two auxiliary officers and, after he stated that he had been robbed, the auxiliary officers detained the defendant. However, Burden's alleged observation of force being used is in sharp conflict to the complainant's version of events. Indeed, at three critical junctures, *i.e.*, immediately following the incident, during the Grand Jury proceedings, and at trial, the complainant has consistently related that the defendant and his codefendant never touched him during the course of the alleged robbery. Second, Burden's purported observation of a robbery in progress practically in front of the police station is belied by the fact that he took no action and said nothing to his partner nor anyone else until the complainant came running over in a hysterical state. Indeed, that Burden remained mute despite standing directly in front of the police station raises serious questions as to whether he actually observed that force was brought to bear upon the complainant. And, finally, Burden's claim to have witnessed the entire incident while standing in front of the police station is contradicted by the testimony of his partner, auxiliary officer Carlos Garcia, who testified that he and Burden had left the police station and been walking for approximately three to five minutes before encountering the complainant. Garcia's testimony was consistent with that of the complainant, who said that the two auxiliary officers had been "walking down the street" when he approached them.

In light of the numerous contradictions in the testimony of the People's witnesses, we conclude that the guilty verdict was contrary to the weight of the evidence (see, CPL 470.15 [5]). In determining whether a verdict is supported by the weight of the evidence, this Court's power is not limited to the rigid application of an enumerated standard of review. Indeed, "[i]f based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may [have been] drawn from the testimony' "

*(People v Bleakley,* 69 NY2d 490, 495, quoting *People ex rel. MacCracken v Miller,* 291 NY 55, 62). If upon the exercise of our factual review power we conclude "that the trier of fact has failed to give the evidence the weight it should be accorded" then we are duty-bound to set aside the verdict *(People v Bleakley, supra,* at 495; *see,* CPL 470.20 [2]).

We find that the inconsistencies in the People's evidence renders it devoid of the evidentiary weight necessary to convince this Court that the defendant and his codefendant employed force or threatened the use of force to take the complainant's money. Accordingly, upon the exercise of our factual review power, we conclude that the verdict was contrary to the weight of the evidence *(see,* CPL 470.15 [5]).

In light of the conclusion reached herein, we reach no other issue raised by the defendant. Mangano, P. J., Bracken, Lawrence and O'Brien, JJ., concur.