■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAURA SERGIO, Appellant. [951 NYS2d 576]—

This appeal involves the tragic death of a newborn child. On the evening of April 6, 2007, the defendant gave birth to an infant girl in a bathroom of the home she shared with her parents and two adult sisters. After the infant was born, she was wrapped in a towel and placed in a plastic bag, and the bag was placed outside of the home inside a garbage bag. At approximately 9:40 p.m., the defendant was taken to the hospital by emergency medical services (hereinafter EMS) after she was found bleeding in the bathroom. Early the next morning, at approximately 3:00 a.m., the police arrived at the defendant's home and discovered, on the back porch, several large garbage bags containing various bloody sheets and towels. The police found the infant's body inside one of the bags. The infant was taken by ambulance to the hospital and was subsequently pronounced dead.

Thereafter, the defendant was charged with murder in the second degree, manslaughter in the first degree, manslaughter in the second degree, and endangering the welfare of a child. The defendant was convicted, after a nonjury trial, of manslaughter in the first degree (*see* Penal Law § 125.20 [4]).

In fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15; *People v Romero*, 7 NY3d 633 [2006]), we find that the verdict of guilt of manslaughter in the first degree was against the weight of the evidence. In conducting our weight-of-the-evidence analysis, we must first determine, based upon the credible evidence, whether a different result would have been unreasonable and, if it would not have been, then we must " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *see People v Danielson*, 9 NY3d 342, 348 [2007]).

Applying this standard of review to the proof adduced at trial, we determine, in the first instance, that an acquittal on the charge of manslaughter in the first degree would not have been unreasonable (*see People v Romero*, 7 NY3d 633 [2006]). Moreover, weighing the evidence adduced at trial, in light of the numerous gaps in their proof, we find that the People failed to provide a credible foundation for the defendant's conviction.

The evidence adduced at trial demonstrated that, after the defendant was found bleeding in her home, the defendant was

taken to the hospital by EMS. The doctors and nurses who treated the defendant at the hospital testified that the defendant was asked, at various stages of her medical treatment, if she was pregnant. Each time the defendant answered that she was not, that she did not know she was pregnant, and that she had no recollection of the birth. During the first few hours of her hospitalization, the defendant's examining physician had the "initial impression" that the defendant had an early miscarriage. It was not until the placenta was recovered and examined that the medical examiner determined that a full-term infant had been born.

The medical examiner testified, based on her autopsy of the infant, that the infant was born full-term and was alive when her umbilical cord was cut, and that there were no bruises on the infant's body. The medical examiner's initial opinion was that the infant died due to asphyxia and "hypothermia due to her exposure to cold environmental temperature." Ultimately, the medical examiner revised her initial opinion and determined that the cause of the infant's death was asphyxia by smothering. The medical examiner explained that she came to this conclusion based upon, inter alia, a hearsay statement made to her by a police officer who found the infant's body at the defendant's home, and hearsay statements contained in a report given to her regarding the investigation. However, the medical examiner could not determine whether the infant was alive when she was wrapped in the towel or at what time the infant had died.

At the close of all the evidence, the prosecutor essentially asked the factfinder to infer that, since the defendant gave birth to the infant and the infant was discovered in a plastic garbage bag while wrapped in a towel, the defendant, intending to cause physical injury, recklessly engaged in conduct which created a grave risk of serious injury to the infant, thereby causing the infant's death. The theory of the prosecution's case was that, after the defendant gave birth to the infant, she cut the infant's umbilical cord and smothered the infant by placing the baby into a towel. However, the evidence adduced at trial did not establish, beyond a reasonable doubt, that it was the defendant who engaged in that conduct. The People's evidence did not eliminate the possibility that it was one or more of the four other individuals who lived with the defendant who were the culpable actors in the events which precipitated the infant's death. All of these individuals, the defendant's parents and two adult sisters, had equal and unfettered access to the infant on the evening the defendant gave birth to her. The evidence did

not establish what transpired during the more than five hours that elapsed between the time that the defendant was taken to the hospital and the time that the police arrived at the defendant's home and discovered the infant's body. The evidence did not establish the time of the infant's death. The evidence did not establish when the infant was wrapped in the towel and placed in the plastic bag, when that bag was placed outside of the defendant's home inside a garbage bag, and, critically, who wrapped the infant in the towel, placed her in the plastic bag, and then placed that bag outside of the defendant's home inside a garbage bag. Furthermore, the People failed to show how the defendant could have removed the infant's body from the home, since an EMS worker testified that when she arrived at the defendant's home, the defendant was unable to walk on her own and had to be lifted out of the house on a stair chair. Based on the record before us, it cannot be determined who caused the infant's death.

We find that the evidence does not credibly support the defendant's conviction of manslaughter in the first degree beyond a reasonable doubt. Accordingly, we reverse the judgment of conviction as against the weight of the evidence (*see People v Nisthalal*, 87 AD3d 702 [2011]; *People v Fortunato*, 70 AD3d 851 [2010]; *People v Zephyrin*, 52 AD3d 543 [2008]; *People v Giocastro*, 210 AD2d 254 [1994]).

In light of our determination, we need not consider the defendant's remaining contentions. Rivera, J.P., Leventhal, Belen and Roman, JJ., concur.