■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WAYNE MCMITCHELL, Appellant. [973 NYS2d 706]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Sullivan, J.), rendered August 22, 2011, convicting him of course of sexual conduct against a child in the second degree, sexual abuse in the second degree (two counts), endangering the welfare of a child (three counts), menacing in the second degree, and harassment in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the facts, the indictment is dismissed, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent with CPL 160.50.

The defendant was convicted, after a jury trial, of one count of course of sexual conduct against a child in the second degree, two counts of sexual abuse in the second degree, three counts of endangering the welfare of a child, one count of menacing in

the second degree, and one count of harassment in the second degree in connection with allegations against him by his two stepdaughters. Upon fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15; *People v Romero*, 7 NY3d 633 [2006]), we agree with the defendant that the verdict of guilt on all of these counts was against the weight of the evidence.

In conducting our weight-of-the-evidence analysis, we must first determine, based upon the credible evidence, whether a different result would have been unreasonable and, if it would not have been, then we must " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *see People v Danielson*, 9 NY3d 342, 348 [2007]). Applying this principle to the evidence adduced at the defendant's trial, we determine, in the first instance, that acquittal of all the charges submitted to the jury would not have been unreasonable based upon the evidence presented and, moreover, that the jury failed to accord the evidence the weight it should have been accorded (*see People v Romero*, 7 NY3d 633 [2006]). The testimony of the prosecution's witnesses failed to provide a credible foundation for the defendant's convictions due to numerous inconsistencies and contradictions.

At trial, the People presented testimony from the defendant's two stepdaughters, then 17 and 16 years old, that the defendant had committed sexual acts against them. The younger stepdaughter testified that the alleged abuse occurred approximately twice per week between 2000 and 2004, starting when she was 5 years old and continuing until she was 9 years old. The older stepdaughter testified to three incidents of abuse, one in 2006 and two in 2008, when she was approximately 12 and 14 years old, respectively. All of the alleged abuse against the stepdaughters took place in their mother's home. The older stepdaughter testified that, in October 2009, several months after the last incident of alleged abuse, she told her mother about the defendant's abuse. In December 2009, the mother contacted the police so that they could investigate her daughter's allegations. Subsequently, in March 2010, the mother learned that the younger stepdaughter had allegedly also been abused, and she again contacted the police.

However, the prosecution's witnesses testified that the defendant and the mother separated in 2002, and, at the time, the defendant had already moved out of the home where the abuse allegedly took place. Thus, many of the alleged incidents of

abuse took place after the defendant had moved out of the home and no longer had a key to it. From 2003 to 2005, a restraining order that the mother obtained against the defendant was in effect, and the mother confirmed that, during one period of time in 2004, the defendant conducted all of his visits with the children outside of the home. The testimony of the prosecution's witnesses was generally inconsistent as to whether, during the other visits, the defendant stayed alone with the children in the mother's home, or whether the grandmother or the mother was always present. In any event, although the younger stepdaughter alleged that the defendant molested her twice per week between 2000 and 2004, the trial testimony clearly established that the defendant's access to the children was often limited after he moved out of the mother's home in 2002.

The evidence further established that, after 2002, the defendant met another woman with whom he had two children. The mother testified that she and the defendant had a contentious relationship after they separated and that, when they were fighting, the defendant was not allowed to see his stepchildren or the three biological children he also had with the mother.

Moreover, although according to the mother's testimony she had known about the alleged abuse of her oldest daughter since October 2009, she did not contact the police until December 2009, close to the time that the father filed a petition for custody and visitation. Subsequently, in March 2010, shortly before the father was to appear in Family Court in connection with the custody and visitation proceeding, the mother again contacted the police, this time regarding the defendant's alleged abuse of the younger stepdaughter. Although the mother testified that the timing was merely coincidental, the prosecution's expert testified that the parties to custody and visitation disputes commonly make false allegations of sexual abuse. In addition, the mother testified that she informed her oldest daughter that the defendant was not her biological father on the same day that she called the police about the alleged abuse; up until that point, both stepdaughters had believed that the defendant was their biological father.

Notably, the mother and the older stepdaughter gave differing accounts of the latter's report of the alleged abuse. While the older stepdaughter testified that she blurted out to her mother over the phone that the defendant had sexually abused her and was relieved to have finally told her, the mother testified that she was informed of the alleged abuse by the mother of the older stepdaughter's boyfriend. The mother testified that, when she confronted the older stepdaughter, the latter did not want to talk about it.

Given the contradictory and inconsistent testimony of the prosecution's witnesses, we find that the evidence does not credibly support the defendant's conviction on any of the charges beyond a reasonable doubt. Accordingly, we reverse the judgment of conviction as against the weight of the evidence, and dismiss the indictment (*see People v Nisthalal*, 87 AD3d 702 [2011]; *People v Fortunato*, 70 AD3d 851 [2010]; *People v Zephyrin*, 52 AD3d 543 [2008]; *People v Giocastro*, 210 AD2d 254 [1994]).

In light of our determination, we need not consider the defendant's remaining contentions. Angiolillo, J.P., Hall, Austin and Miller, JJ., concur.