In the Matter of THOMPSON WATER WORKS COMPANY, INC., Respondent, *v.* HENRY L. DIAMOND, as Commissioner of the Department of Environmental Conservation of the State of New York, Appellant.

Fourth Department, May 23, 1974.

*Louis J. Lefkowitz, Attorney-General (Julius Feinstein, Ruth Kessler Toch* and *Stanley Fishman* of counsel), for appellant.

*Oot, Greene, Setright, Hershdorfer & Sharpe (John C. Setright* and *Jerrold P. O'Brien* of counsel), for respondent.

CARDAMONE, J. Thompson Water Works Company, Inc., (Thompson) sought a permit to operate a well to provide drinking water for the residents of the Village of Manlius in Onondaga County which the Commissioner of the Department of Environmental Conservation of the State of New York (State Commissioner) refused to issue, stating that the well water does not meet the standards for drinking water established by the New York State Department of Health. Claiming that these standards (10 NYCRR Part 72) are arbitrary and bear no relationship to human health, Thompson obtained an order from Special Term directing a hearing on this issue. The State Commissioner has appealed, urging dismissal of Thompson's petition on the following grounds: (1) that an article 78 proceeding is not appropriate here; (2) on the merits; (3) that the State Commissioner of Public Health is an indispensable party. While some of appellant's arguments have merit, nonetheless, we agree with the conclusion reached by Special Term that there should be a hearing in this matter.

It is, of course, well-settled law in this State that an article 78 proceeding is not an appropriate vehicle to use in seeking review of an action of an administrative agency deemed legislative in nature. (*Matter of Lakeland Water Dist.* v. *Onondaga County Water Auth.*, 24 N Y 2d 400, 407.) The establishment of potable water standards for New York State must be deemed a legislative act (Public Health Law, § 201, subd. 1, par. [m]; § 1100, subd. 1) where no provision is made in the statute for notice and a hearing with respect to the establishment of these regulations. Despite the unavailability of an article 78 proceeding, we may treat this proceeding as an action for a declaratory judgment (*Matter of Lakeland Water Dist.* v. *Onondaga County Water Auth.*, *supra*, pp. 407–408; CPLR 103, subd. [c]). Accordingly, Thompson's action is so treated, which disposes of the motion to dismiss on the grounds that the form of the action is improper.

With respect to appellant's contention that the petition should be dismissed on the merits, we observe that both of the affidavits attached to Thompson's petition (one by an expert experienced in sanitary engineering, another by a doctor with an extensive background in public health) state that the " quantity of total

dissolved solids in the water, standing alone without further analysis of the constituents making [them] up " is spurious because " many different types of solids in water are not harmful * * * a lot of them are beneficial ", concluding that " the constituents * * * should be tested to decide whether the water is potable or not, not the general classification of total dissolved solids ". It is the opinion of the engineer that the test for the presence of the constituents is a " simple " one which he has performed on Thompson's well and that analyses reveal no harmful ones which could have any possible adverse health effect on anyone drinking the water. The public health officer performed similar tests and concluded that the well is an " excellent quality source of public water supply and its use should be encouraged, not discouraged ". These expert opinions challenge the State's regulation as being arbitrary and not bearing any relationship to public health. Appellant's experts take a contrary position and cite the fact that the current Federal drinking water standards prohibit an excess of 500 per million units of total dissolved solids in the water supply (Code of Fed. Reg., tit. 42, § 72.205, subd. [b], par. [1]). It has long been settled that " a statute entitled a health law must be a health law in fact as well as in name, and must not attempt in the name of the police power to effect a purpose having no adequate connection with the common good (*Matter of Viemeister* v. *White,* 179 N. Y. 235, 238). The court in *Viemeister* went on to state (quoting from *Health Dept. of N. Y.* v. *Rector,* 145 N. Y. 32, 39) that " ' it must tend in a degree that is perceptible and clear towards the preservation of the * * * health * * * or welfare of the community ' ''. Since the papers before us reflect a divergence in scientific opinion, a trial appears appropriate where respondent Thompson would have the burden of establishing that the promulgated standard of 500 units of total dissolved solids per million bears no relation to public health and hence is arbitrary. Plainly, the public health should not be used as a pretext to aid one supplier in competition with others to provide potable drinking water to the residents of the Village of Manlius (*Loblaw* v. *New York State Bd. of Pharmacy,* 11 N Y 2d 102, 107). Similar assaults on regulations governing equally complex areas of public health have been resolved following trials (*Grossman* v. *Baumgartner,* 17 N Y 2d 345 [relationship between tattooing and hepatitis]; *Chiropractic Assn. of N. Y.* v. *Hilleboe,* 12 N Y 2d 109 [effects of X-ray radiation upon human reproductive organs]; *Aerated Prods. Co.* v. *Godfrey,* 290 N. Y. 92 [whether Instant Whip was

a milk product subject to Public Health Law regulation or an ice cream product]). Indeed, the Court of Appeals in *Aerated Prods.* v. *Godfrey* (*supra*, p. 99) recognized that a statutory classification may be proven by the facts to be arbitrary. The proof thus obtained is governed by the rule, however, that even where divergent expert views exist, it is not for the courts to determine which scientific view is correct but, as the Supreme Court has stated " the judicial function is exhausted with the discovery that the relation between the means and the end is not wholly vain and fanciful, an illusory pretense " (*Williams* v. *Mayor*, 289 U. S. 36, 42; see, also, *Chiropractic Assn. of N. Y.* v. *Hilleboe, supra*, p. 114). An administrative regulation — legislative in nature — will be upheld if it has a rational basis and the courts will not substitute their judgment with respect to public health problems for those expert in the field (*Grossman* v. *Baumgartner, supra*). Concededly, the expert's knowledge and judgment is highly significant to the judicial inquiry with respect to the arbitrariness of the regulation which specifies the allowable concentration of total dissolved solids in drinking water. However, such expert opinion does not transform the question of law to be resolved by the trial court into a question of fact to be answered only by experts so as to preclude the decision from a legal judgment (Jaffe, Judicial Control of Administrative Action [1965], p. 580).

Finally, we agree that the State Commissioner of Public Health is a necessary party in this matter. By chapter 140 of the Laws of 1970 (eff. July 1, 1970) all of the functions, powers, duties and obligations of the Conservation Department and the Water Resources Commission were transferred to and assumed by the Department of Environmental Conservation and thereafter the Conservation Department and the Water Resources Commission were abolished (Environmental Conservation Law, §§ 75, 76). Similarly, by the same chapter 140 the classification of waters function performed by the Commissioner of Health, Department of Health pertaining to water pollution control and contained in the Public Health Law including (among others) titles 2 and 3 (but not title 1 which relates to potable waters) of articles 11 and 12 of the Public Health Law was transferred to the Department of Environmental Conservation (Environmental Conservation Law, § 77). Section 1205 of the Public Health Law thus transferred relates to the classification of waters and relates specifically to water pollution control. The section referred to prescribes standards for the usage of the classified waters of the State and explicitly

requires that sources of water classified for drinking purposes meet New York State Department of Health drinking water standards (subd. 5; par. [c], cls. [i], [ii]). It appears that while the Departments of Public Health and Environmental Conservation have concurrent jurisdiction over the public water supplies, their functions are distinguishable. The general purpose for both departments is the public health, safety and welfare. The Environmental Conservation Department accomplishes this by a general supervision of the amount of pollutants allowed to enter the State's water resources, while the Health Department controls the purity of those water supplies which are used for public consumption. Thus, the former Water Resources Commission function (now Environmental Conservation Department) relates to classification and to the allocative function (Environmental Conservation Law, § 17-0301) and to the granting of new service areas (6 NYCRR Part 601). The authority for setting standards for drinking water, however, always has been and still is the exclusive function of the State Department of Public Health (Public Health Law, § 201, subd. 1, par. [m]; § 1100; 10 NYCRR Part 72). Thus, it would appear that the Health Department and its Commissioner had the power to promulgate the standards concerning the permissible level of dissolved solids in public water supplies. The Health Department must also approve the plans and specifications for any such public water supply (10 NYCRR 5-1.2).

Since the Commissioner of Health had the power to, and did, in fact, promulgate the standard under attack in this case, any judgment declaring the standard an invalid exercise of police power because there is no relationship between it and the public health, safety and welfare (which is, in essence, what Thompson seeks) will adversely affect the Commissioner and, therefore makes him a necessary party. The CPLR 1001 (subd. [a]) provides, "persons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants." Further it is well-settled that, "a declaratory judgment serves a legitimate purpose only when all persons who may be affected thereby and who may question in a court the existence and scope of the rights declared are parties to the action and have opportunity to be heard." (*Cadman Mem. Cong. Soc.* v. *Kenyon*, 279 App. Div. 1015, 1016, affd. 306 N. Y. 151, rearg. den. 306 N. Y. 851.) While CPLR 1003 provides that nonjoinder of a

party who ought to be joined under CPLR 1001 is a ground for dismissal, it also provides that parties may be added or dropped by the court on its own initiative. In view of the fact that the affidavits before us are made by officials in the Department of Public Health we assume that the Commissioner has knowledge of the subject matter of this litigation. Since the Attorney-General will defend the Commissioner of Health as well as the Commissioner of Environmental Conservation, no prejudice will result to either Commissioner by the joinder which we deem necessary in this case.

The order appealed from should be modified to permit petitioner to serve the State Commissioner of Public Health.

MARSH, P. J., SIMONS, MAHONEY and GOLDMAN, JJ., concur.

Order unanimously modified by directing the addition of the Commissioner of Public Health of the State of New York as a necessary party respondent, and as so modified affirmed with costs to petitioner-respondent.