In the Matter of SHELDON M. BERLOW et al., Petitioners, v JOHN P. LOMENZO, as Secretary of State, Respondent.

Fourth Department, October 24, 1975

---

*Jaeckle, Fleischmann & Mugel (Brian J. Troy, Timothy C. Leixner* and *John L. Bulger* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General (Eugene A. Panfil* and *Michael G. Wolfgang* of counsel), for respondent.

GOLDMAN, J. In this article 78 proceeding petitioners Sheldon M. Berlow and Arthur H. Judelsohn, licensed real estate

brokers doing business under the name of Berlow Real Estate, seek a judicial review of a determination by respondent John P. Lomenzo, the former Secretary of State of New York, which found that petitioners had demonstrated untrustworthiness while negotiating a real estate transaction. The secretary's order suspended petitioners' licenses indefinitely unless by November 15, 1973 "the said brokers have filed a detailed statement with the Department of the profit they have earned as their compensation in said transactions and submit to the Department a certified or bank check payable to the Kenmore Housing Authority in full reimbursement for any and all of their share of the profits realized in the sale of the property to the Kenmore Housing Authority; that the filing of such proof after the commencement of the suspension shall terminate same".

Petitioners seek annulment of the determination on the grounds that it is not supported by substantial evidence; that the determination was arbitrary and capricious and consti- tuted an abuse of discretion; that the determination was the product of a procedure which denied due process of law in that petitioners did not receive a fair and adequate notice of the charge of untrustworthiness and the facts upon which the charge was based; that the hearing officer was prejudiced, thereby depriving them of a fair hearing; that the conditional suspension of petitioners' licenses exceeded the secretary's authority and, finally, that the measure of punishment was excessive.

A full and lengthy administrative hearing was held in which petitioners were represented by counsel. The chronol- ogy of the evidence is essential and material in the considera- tion of the merits of the determination. The real property which is the subject of the transactions is located in the Village of Kenmore, N.Y. and was owned by persons residing in Ohio (Ohio Sellers). In March, 1972 the owners, through their Buffalo attorney, Eugene Downey, listed the property for sale with petitioners on a nonexclusive basis. The list price was $110,000. About the same time, a public housing devel- oper, Sanders & Associates (Sanders), was searching for a site for the Kenmore Housing Authority (Authority) for construc- tion of a public housing facility for the elderly, subject to the approval of the Authority and the United States Department of Housing and Urban Development (HUD). Sanders retained a licensed real estate broker, one David Braun, to find a

suitable site which Sanders would present to the Authority for approval. Braun contacted petitioner Berlow and discussed the purchase of the subject parcel on or about April 19, 1972. At approximately the same time one Donald Serotte, who headed the group which eventually purchased the property from Ohio Sellers, contacted petitioner Judelsohn about the possible purchase of the property.

Braun testified that at an April meeting he initially offered $85,000 subject to site approval by the Authority and partial rezoning. He added that Berlow thereafter told him on May 5 that $110,000 was needed. At a subsequent meeting on May 7, Berlow assured Braun that a contract could be negotiated without problems, that he had made an appointment "with the lawyers to discuss the option and get it resolved", and that in the interim Braun should "go ahead". Shortly thereafter, Berlow informed Braun that a 30-day option would cost $1,500 per month with one half attributable to the purchase price, but that it was difficult to get the sellers to agree to an option contract. Berlow prepared the option in June and for the first time the names of Donald D. Serotte and Sherwood B. Freed of Buffalo appeared in the option instrument as sellers, rather than the names of Ohio Sellers. On about August 1, 1972 Braun secured execution of the option by Sanders. After this Berlow notified Braun that Ohio Sellers had contracted to sell the property to "another purchaser". Braun testified that Berlow had never revealed the names of the owners of the property, although Braun had early learned that they resided "some place in Cleveland, Ohio". It was not until November 22, 1972, Braun testified, that he learned that petitioners were partners in the business enterprise which was the "other purchaser".

Berlow's testimony was in disagreement with Braun's on several points. He testified that he had informed Braun from the outset that the asking price was $125,000 and that attorney Downey, on behalf of Ohio Sellers, rejected Braun's $85,-000 offer, stating that the sellers were not interested in an option contract. Berlow testified that although Braun authorized him to make an offer of $110,000, it was subject to conditions which were unacceptable to Ohio Sellers who wanted a "firm deal". Berlow contended that it was after the rejection of the $110,000 offer that he began negotiating with Downey on behalf of the other prospective purchaser, the Serotte group. These negotiations resulted in an agreement to

sell the property to Serotte and associates for $77,500 cash with no contingencies.

Serotte testified that sometime in May, 1972 he gave petitioner Judelsohn a $70,000 purchase offer which attorney Downey rejected. Judelsohn informed Serotte that other unidentified parties were making offers and that the owners wanted $80,000 with no contingencies. An oral agreement was made between Ohio Sellers and the Serotte group to sell the property for $77,500 sometime before May 15, precisely when Berlow was assuring the representative of the other prospective purchaser that something could be worked out for $110,-000.

Downey testified that he negotiated the sale to the Serotte group through petitioner Berlow and that at the time of the contract to sell, Ohio Sellers agreed to pay a 6% commission to Berlow Real Estate. The sale was not consummated until August 4, 1972, at which time the deed named Colvin-Kenmore Associates as grantee, and the final sale price was reduced to $72,850. The reduction in price was in exchange for Berlow Real Estate's promise not to require the sellers to pay the $4,650 for brokers' commissions. Colvin-Kenmore Associates was a partnership formed by Serotte, Freed, a third member of the Serotte group and Berlow and Judelsohn early in June, 1972 for the express purpose of purchasing the subject property. Although a business certificate with the names of the partners was filed in Erie County Clerk's office on August 1, 1972, Downey testified that he first learned that Berlow and Judelsohn were thus involved as purchasers was from a newspaper article in February, 1973. Serotte testified that he did not inform Sanders or Braun that Berlow and Judelsohn were principal-purchasers.

A revamped purchase offer, dated December 13, 1972 with a purchase price of $107,000 and a closing date of March 1, 1973, was finally executed by Sanders and by a partner of Colvin-Kenmore Associates.

Both Serotte and Berlow testified that after Ohio Sellers and Serotte had reached an agreement to sell for $77,500, Berlow and Judelsohn took the initiative in informing Serotte that Sanders might be interested in buying the property for $110,000. The idea for the formation of a partnership was Serotte's in order to give petitioners a "piece of the action" and reduce the original outlay by eliminating the cost of petitioners' commission. The partnership agreement gave pe-

titioners a one-third interest and any commissions earned by petitioners were to be paid into the partnership account.

If petitioners had not entered the partnership, they would have realized a commission of $4,650 on the sale from Ohio Sellers to the Serotte group. Similarly, if petitioners had not become partners, their 6% commission on the $107,000 resale to Sanders for the Authority would have earned them $6,420, or a total of $11,070 on both transactions. Because petitioners contributed their commissions to the purchasing partnership, the partnership made a gross profit of approximately $34,150 on the sale and resale. An accounting submitted by petitioners shows a net profit of only $24,012.84. This would make the one-third profit interest of petitioners worth $8,004.16, which is still considerably more than a 6% commission on a single sale transaction to Sanders.

After reviewing all of the testimony, the hearing officer made the following finding: "That it is concluded that this reflects a pre-designed plan conceived by the respondents brokers acting in concert with the Serotte group to purchase the property at a speculative price of $77,500 to be sold to the Kenmore Housing at an escalated price of $110,000 with the respondents broker becoming a principal in the negotiations which was concealed from the Sellers (Downey) and the ultimate buyers (Sanders-Kenmore Housing) and in so doing demonstrated untrustworthiness pursuant to Section 441-c of the Real Property Law". The respondent Secretary of State concurred and approved the hearing officer's determination.

In an article 78 proceeding which seeks judicial review of an administrative determination, the judicial inquiry is whether substantial evidence was presented from which the administrative agency could reasonably reach its determination (CPLR 7803, subd 4; Real Property Law, § 441-f). Notwithstanding petitioners' claims to the contrary, the testimony at the hearing clearly produced substantial evidence showing that petitioners-brokers demonstrated the untrustworthiness required under section 441-c of the Real Property Law in order to revoke or suspend their licenses. Facts were produced at the hearing concerning the acts and conduct of petitioners which warranted the conclusion of untrustworthiness (see *Matter of Gold v Lomenzo,* 29 NY2d 468; *Matter of Patterson v Department of State of State of N. Y.,* 35 AD2d 616). The determination was based on substantial evidence and was not arbitrary, capricious or an abuse of discretion.

Petitioners' claim that the determination was the product of a procedure which denied due process of law in that they did not receive a fair and adequate notice of the charge of untrustworthiness and the facts upon which the charge was made is without merit. The notice of hearing stated that it was made pursuant to section 441-e of the Real Property Law and annexed to it was the affidavit setting forth the material facts of the charge. It specifically stated that the hearing was to determine whether petitioners "demonstrated untrustworthiness and incompetency pursuant to Section 441-c of the Real Property Law and for such action as may be warranted". Such a notice is sufficient; it "specifically referred to the sections of the Real Property Law upon which the charges were based and the actions which brought about the charges" (*Matter of Borenstein v Lomenzo*, 41 AD2d 1007, 1008). (See, also, *Matter of Butterly & Green v. Lomenzo*, 36 NY2d 250; *Matter of Triolo v Department of State of State of N. Y.*, 37 AD2d 641.)

We find no substance to the claim that the hearing officer was prejudiced and the hearing unfair. He was not the department employee who originally investigated the transaction and verified the accusatory affidavit. He did question the witnesses and make the recommendation to the Secretary of State. That was his function and responsibility as hearing officer. The record does not indicate that he prejudged the matter. He permitted petitioners to present all of their witnesses and documentary evidence, prepared a complete record, and did not intimidate or threaten witnesses. Moreover, this article 78 proceeding in the nature of certiorari assures petitioners judicial review of the merits of the administrative determination and is statutorily prescribed (Real Property Law, § 441-f). No supportable reason has been advanced by petitioners for invalidating the administrative procedure in the case at bar for lack of due process.

The conditional suspension, which will be terminated upon compliance with its terms, is within respondent's authority and not excessive. The Secretary of State has "inherent power" to impose conditions on license suspensions provided "that conditions be reasonable and relate to the broker's professional activities as to matters which are within respondents' official province and area of control" (*Matter of Gold v Lomenzo*, 29 NY2d 468, 479, *supra*. See, also, *Matter of Berry v Lomenzo*, 39 AD2d 745; *Matter of Fitzsimons v Department*

*of State,* 34 AD2d 996; *Matter of Edelstein v Department of State of State of N. Y.,* 16 AD2d 764). The penalty assessed by the Secretary of State should not be overturned unless it is so disproportionate as to be "shocking to one's sense of fairness" *(Matter of Butterly & Green v Lomenzo,* 36 NY2d 250, 257–258, *supra).* Therefore we find that the penalty and condition imposed by the respondent are neither excessive nor an abuse of discretion.

The determination should be confirmed.

MARSH, P. J., CARDAMONE, SIMONS and DEL VECCHIO, JJ., concur.

Determination unanimously confirmed with costs.