In the Matter of BERNARD J. BRABAZON, Petitioner, v MARIO CUOMO, as Secretary of State of the State of New York, Respondent.

Third Department, November 26, 1975

*Miller & Seeger (Seymour W. Miller* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (John Q. Driscoll* and *Ruth Kessler Toch* of counsel), for respondent.

GREENBLOTT, J. Petitioner, a licensed real estate broker, received a listing on a parcel of 130 acres of undeveloped land co-owned by five individuals in Windham, New York. Thereaf-

ter a member of the partnership, Raynor Builders, made an offer on behalf of Raynor to purchase the property and on July 9, 1970 a binder was executed. Many weeks passed during which time problems developed in regard to the hiring of an attorney and the preparation of the formal contract. The matter lay dormant into the winter months with neither the sellers nor the purchasers demonstrating any urgency. On December 10, 1970 petitioner formed a corporation known as West Windham Development Corporation with himself as president. A contract of sale was prepared between the sellers and West Windham Development Corporation for the same price as previously offered by Raynor. On or about December 23, 1970 petitioner advised one of the partners of Raynor that the deal was "dead". Petitioner contends he disclosed to the sellers that he was a principal in West Windham Development Corporation; however, two of the sellers denied this and testified that petitioner told them that the identity of the stockholders of West Windham Development Corporation was of no concern to them. They also testified that petitioner informed them that the former purchasers had broken up their partnership and were going into bankruptcy. Thereafter, all of the sellers signed the West Windham contract. The sellers testified further that it was not until they saw petitioner's signature on the deposit check were they aware that he was involved with the West Windham Development Corporation.

On March 10, 1971 petitioner returned the $100 deposit to Raynor and thereafter petitioner informed Raynor that if they were still interested in the property he would sell it to them at a price of $100 per acre above the price paid by West Windham. Raynor then commenced legal action against petitioner and the sellers to compel the assignment of the West Windham contract to it and thereafter filed a complaint against petitioner with the Department of State.

We are of the view that the record contains substantial evidence after resolution of issues of credibility to support findings that petitioner had been engaged to bring about a contract of sale on property listed with petitioner; that a contractual agreement with an interested buyer was pending; that petitioner sought to acquire an interest in the property through a corporation in which petitioner had a major interest; and that petitioner did not disclose the true facts and his true position to the listing owners. On the basis of such facts

the Secretary of State was justified in concluding that the petitioner "undertook to act in furtherance of his own interest * * * and in so acting contravened his duties and responsibilities as a broker." Section 175.4 of the Rules of the Department of State (19 NYCRR 175.4) provides as follows: "175.4 [Broker's purchase of property listed with him.] A real estate broker shall not directly or indirectly buy for himself property listed with him, nor shall he acquire any interest therein without first making his true position clearly known to the listing owner."

We therefore sustain the finding of demonstrated untrustworthiness in violation of section 441-c of the Real Property Law. We further find, however, that there is no basis for a finding of incompetency, and that the penalty imposed is unlawful and excessive.

The Secretary of State imposed the following penalty upon the petitioner:

"All real estate broker's licenses of Bernard J. Brabazon are hereby indefinitely suspended commencing November 15, 1974, unless or until the respondent submits to the Department satisfactory proof:

"1. That he has delivered to the sellers Walter Klapischak, Stephen Sekreta, Michael Dumka, Michael Bilous and Natalie Bilous an agreement, in form satisfactory to the Department, wherein and whereby he agrees to indemnify and to hold harmless the sellers, and each of them, and to pay for

"(a) all damages, court costs and expenses assessed against the sellers or any of them by any court in an action or proceeding heretofore or hereafter commenced arising out of either or both of the transactions described herein between sellers and purchasers Raymond Siecinski and Norman Bunce, and sellers and said Windham Development Corp., including any action to recover brokerage commissions, (b) all reasonable attorney's fees and expenses paid or incurred by sellers, or any of them, in the defense of any such action or proceeding and, (c) all claims made against sellers or any of them by Brabazon Realty Inc. for brokerage commissions in either of the said transactions.

"2. That he has paid to the sellers, or to such of the sellers, the amounts actually paid or expended by them for the damages, court costs and expenses, attorney's fees and expenses, and brokerage commissions afore described to date hereof.

"The indefinite suspension herein shall be applicable to and prohibit the granting of any renewal of a real estate broker's license or any application for such a license respondent may submit. Should the respondent be relieved of the indefinite suspension by satisfying the conditions provided for herein and thereafter fail and refuse to make any payment agreed to in the indemnity agreement he delivered to the sellers, he shall be deemed to have demonstrated untrustworthiness and his real estate broker's license shall be subject to suspension or revocation."

It is beyond dispute that respondent is vested with broad discretion in imposing punishment on real estate licensees who have demonstrated untrustworthiness, and the exercise of that discretion will not be lightly disturbed *(Matter of Butterly & Green v Lomenzo,* 36 NY2d 250, 256).

In our opinion, the penalty imposed in the present case is improper as a matter of law. While the Secretary of State is empowered to find that petitioner's attempts to acquire the sellers' property for his own interest without making a satisfactory disclosure constitutes professional untrustworthiness under section 441-c of the Real Property Law, such a finding does not in and of itself warrant the conclusion that Raynor suffered actionable damages solely as a result of petitioner's actions.

While petitioner may have acted in an untrustworthy manner when measured against professional standards, a judicial trier of fact could clearly find that any damage suffered by Raynor (if in fact there be any in view of the fact that a contract between Raynor and the sellers was never even signed) was caused primarily by dilatory tactics on the part of the sellers or Raynor's partners or both, and that petitioner's acts did not proximately cause damage to Raynor. Nevertheless, respondent has attempted to require petitioner to indemnify the sellers for their wrongful acts regardless of fault. Such a procedure is an improper invasion of the province of the judicial system. Respondent's determination should therefore be modified to provide that the petitioner's license as a real estate broker in the State of New York should be suspended for a period of 90 days, without prejudice to the right of renewal.

The determination should be modified, so as to suspend all real estate broker's licenses held by the petitioner for a period of 90 days commencing 30 days after the entry of an order

pursuant to this decision, and, as so modified, confirmed, without costs.

HERLIHY, P. J., KOREMAN, MAIN and REYNOLDS, JJ., concur.

Determination modified, so as to suspend all real estate broker's licenses held by the petitioner for a period of 90 days commencing 30 days after the entry of an order pursuant to this decision, and, as so modified, confirmed, without costs.