Wachtler, J.
The sole issue presented in this case is whether the penalty imposed by the Secretary" of State against the petitioner real estate broker was " 'so disproportionate to the offense, in light of all the circumstances, as to be shocking to one’s sense of fairness’ ” (Matter of Pell v Board of Educ., 34 NY2d 222, 233, quoting Matter of Stolz v Board of Regents, 4 AD2d 361, 364). The Appellate Division found that the secretary’s $200 fine was an adequate punishment but that his direction that, as a condition for the removal of the suspension of petitioner’s real estate broker’s license, the broker be compelled to repay the $15,050 profit she made on the resale of certain property was an excessive sanction and, therefore, should be set aside. We are of the opinion that the Appellate Division erred in setting aside the secretary’s determination that the $15,050 profit be returned.
In April, 1974, the petitioner, Mrs. Miriam Kostika, sold a three-family residence which she owned in Forest Hills, New York, to Mr. and Mrs. Hanel. Mrs. Kostika was at that time a licensed real estate broker, although she never informed the purchasers of that fact and indeed used her maiden name, Miriam Schwecky, in all her dealings with the Hanels, despite the fact that Mrs. Hanel had on several occasions asked petitioner if she was a real estate broker. In addition, in connection with her attempts to sell the premises in question, during the winter of 1973-1974 Mrs. Kostika placed an advertisement in the New York Times. This advertisement did not indicate either Mrs. Kostika’s name or the fact that she was a licensed real estate broker or dealer in real property.
On April 1, 1974, title passed to Mrs. Kostika from the Rubegold Realty Co. for the purchase price of $61,000. At a simultaneous closing, Mrs. Kostika transferred title to the same premises to the Hanels for a purchase price of $76,050. *675 It was not until this point that the Hanels became aware that Mrs. Kostika was a real estate broker.
Subsequently, the Hanels complained about Mrs. Kostika’s conduct to the Department of State and an investigation by the Division of Licensing Services ensued. A hearing was convened pursuant to section 441-e of the Real Property Law to determine the validity of the alleged violations raised in a formal complaint filed by the investigator. Mrs. Kostika was charged with having violated both section 175.6 of the Rules and Regulations of the Department of State promulgated pursuant to article 12-A of the Real Property Law (19 NYCRR 175.6) and with a violation of section 396-b of the General Business Law.
Section 175.6 of the Rules and Regulations of the Department of State clearly requires that "[bjefore a real estate broker sells property in which he owns an interest, he shall make such interest known to the purchaser.” Section 396-b of the General Business Law requires: "Any person, firm, corporation or association, or agent or employee thereof, hereinafter called person, who, being engaged in the business of dealing in any property, makes, publishes, disseminates, circulates or places before the public or causes, directly or indirectly, to be made, published, disseminated, circulated or placed before the public, in this state, any advertisement respecting any such property, in any newspaper, magazine, or other publication, or over any radio station or television station, unless it is stated in any such advertisement that the advertiser is a dealer in such property or from the context of any such advertisement, it plainly appears that such person is a dealer in such property so offered for sale in any such advertisement * * * is guilty of a misdemeanor.”
Mrs. Kostika appeared in person at the hearing and was represented by counsel. Both sides were given the opportunity to present witnesses and offer evidence, and at the conclusion of the hearing, the hearing officer found that Mrs. Kostika had demonstrated untrustworthiness. Pursuant to section 441-c of the Real Property Law the hearing officer declared that Mrs. Kostika’s license be "suspended for a period of three months or in lieu thereof to pay a fine to the department [of State] in the sum of $200”. The officer further determined that "[a]t the end of the period of suspension or upon payment of the fine the aforementioned license shall be further suspended until such time as the respondent [Mrs. Kostika] has pre *676 sented proof satisfactorily to the Department that she has returned to Mr. and Mrs. Hanel the sum of $15,050.”
The Secretary of State confirmed the determination of the hearing officer in all respects. In modifying the secretary’s decision, the Appellate Division found that there was substantial evidence in the record to support the finding of untrustworthiness, correctly noting that it is not the province of the court to substitute its judgment for that of the administrative agency (see Matter of Pell v Board of Educ., 34 NY2d 222, supra, and cases cited therein; Matter of Sigety v Ingraham, 29 NY2d 110, 114; Matter of Luxemburg v Stichman, 2 AD2d 605, 607). Yet, that court struck down the secretary’s ruling that the broker be compelled to disgorge the profit made on the transaction, requiring only that the $200 fine be paid and noting that in their opinion it did not appear that the purchasers had been overcharged for the property.
Where, as here, the administrative agency’s determination is based upon substantial evidence, the penalty imposed is a matter of discretion to be exercised solely by the agency. Of course, this discretion is not to be completely unfettered. As we noted in Matter of Pell v Board of Educ. (34 NY2d 222, supra) it has long been settled in our State’s jurisprudence that a fine or penalty imposed by the administrative agency is not to be disturbed unless it is clearly disproportionate to the offense and completely inequitable in light of the surrounding circumstances. Thus, the "shocking to one’s sense of fairness” test was developed in the case law.
This court has also recognized the subjective and somewhat amorphous nature of this standard. Thus, in Pell (p 234) we attempted to broadly outline the myriad considerations to be taken into account in evaluating the sanction imposed in each individual case: "[I]t may be ventured that a result is shocking to one’s sense of fairness if the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals. Additional factors would be the prospect of deterrence of the individual or of others in like situations, and therefore a reasonable prospect of recurrence of derelictions by the individual or persons similarly employed.”
*677 Applying these guidelines to the case now before us, the conclusion is inescapable that the penalty imposed by the Secretary of State should have been allowed to stand. It cannot be gainsaid that the public at large has an interest in being protected from unreliable and untrustworthy real estate brokers engaging in somewhat less than arms-length and honorable sales practices. The responsibility for effectively providing that protection has been delegated to the Secretary of State (see Matter of Butterly & Green v Lomenzo, 36 NY2d 250, 256). Accordingly, the secretary must be accorded broad discretion in imposing penalties designed to safeguard the public interest and discourage real estate brokers from engaging in shadowy practices (Matter of Butterly & Green v Lomenzo, 36 NY2d 250, 256, supra; see Matter of Barlow v Lomenzo, 49 AD2d 160; Matter of Diona v Lomenzo, 26 AD2d 473; Matter of Edelstein v Department of State, 16 AD2d 764).
In the instant case, the sanction imposed by the secretary is well-suited to these ends. One can hardly fathom a more effective means of removing the incentive for engaging in devious conduct, and thereby protecting the unwary purchaser from being overreached or defrauded, than a penalty which insures that the malefactor is denied the fruits of his misdeed. Further, it cannot outrage one’s sense of fairness that the impact on the broker here was disproportionate in that she was compelled to return her ill-gotten profit and pay a fine of $200—a net loss to her of $200. Hence, there was no basis for upsetting the determination of the Secretary of State.
Accordingly, the judgment of the Appellate Division should be reversed and the Secretary of State’s direction that the petitioner be required to disgorge the profit made on the transaction should be reinstated.
Chief Judge Breitel and Judges Gabrielli, Jones, Fuchs-berg and Cooke concur with Judge Wachtler; Judge Jasen dissents and votes to affirm for the reasons stated in the concurring memorandum by Mr. Justice Vincent A. Lupiano at the Appellate Division.
Judgment reversed, with costs, and the determination of the Secretary of State reinstated.