QUINTARD ASSOCIATES, LTD., Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent.

Fourth Department, May 27, 1977

*Boyle & Vita (John B. Vita* of counsel), for appellant.

*Warren B. Pesetsky (Joseph Ryan* of counsel), for respondent.

GOLDMAN, J. In this article 78 proceeding, transferrred by order of Onondaga Supreme Court, petitioner Quintard Associates, Ltd. (Quintard) seeks to annul the determination of the New York State Liquor Authority (Authority) which suspended Quintard's license for 30 days, 15 days of which were deferred. The reason given for the suspension is "[t]hat the licensed premises and the area adjacent thereto have been a source of noise or disturbance which tends to adversely affect the health, welfare, safety or repose of the inhabitants of the area in which the licensed premises are located; all cause for revocation, cancellation or suspension of such license in accordance with Rule 36, subdivision 1 (q) of the Rules of the State Liquor Authority (9 NYCRR 53.1 q)." Quintard urges annulment of the order on the ground that there is no substantial evidence in the record to support the charges and secondly, that subdivision (q) of section 53.1 fails to provide standards which would give a person of ordinary intelligence a reasonable opportunity to know what conduct is proscribed and that therefore the section is unconstitutional.

The first objection is without merit. The Authority's findings on this entire record are supported by substantial evidence (CPLR 7803, subd 4). As we recently stated in *Matter of Inside Straight v State Liq. Auth.* (56 AD2d 720) "[t]he substantial evidence rule requires only that the determination of the authority be supported by ' "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion".' "

The Authority's hearing was attended by approximately 25 citizens, most of whom lived in the vicinity of the licensed premises. Six of these residents testified, as did the director of the police department of the town. They stated that the noise generated from the club prevented them and members of their families from sleeping, that the noise came from the music, from vehicles entering and leaving the premises, from boisterous patrons (as many as 75 or 80) assembled in the parking lot and was particularly bothersome in the summer when windows were open. The hearing officer credited all of the testimony and the petitioner concedes that "[t]he facts are not in dispute". Moreover, if the veracity of witnesses is in dispute "it is for the administrative board to pass upon the credibility of witnesses and to base its inferences on what it accepts as the truth" *(Matter of Avon Bar & Grill v O'Connell,* 301 NY 150, 153). The testimony at the hearing clearly supports the Authority's determination that Quintard conducted its opera-

tions in such a manner that property owners in the area were repeatedly and regularly deprived of the quiet enjoyment of their homes.

The petitioner's issue of unconstitutionality of subdivision (q) of section 53.1[1] presents an interesting and complex question. Petitioner argues that the provision of the section which prohibits "noise or a disturbance which tends to adversely affect the health, welfare, safety or repose of the inhabitants" who reside in the area "provides no guidance to men of common intelligence as to what conduct is proscribed, and therefore is unconstitutionally vague". Moreover, petitioner maintains that the prohibition lacks clarity, is overbroad and thus impermissibly intrudes upon the exercise of First Amendment rights.

The vagueness doctrine is commonly applied to criminal statutes *(Jordan v De George,* 341 US 223, 230-231, reh den 341 US 956; *Connally v General Constr. Co.,* 269 US 385, 391; *People v Lang,* 36 NY2d 366, 369; *People v Byron,* 17 NY2d 64, 67) and to administrative regulations which carry penal sanctions *(United States v Mersky,* 361 US 431; *Kraus & Bros. v United States,* 327 US 614, 621). There is, however, a growing recognition that it is also applicable to statutes or administrative regulations imposing serious civil sanctions, especially where First Amendment rights are implicated *(Jordan v De George, supra; Small Co. v American Sugar Refining Co.,* 267 US 233, 239; *Sill v Pennsylvania State Univ.,* 462 F2d 463, 467; *Muller v Conlisk,* 429 F2d 901, 903; *Soglin v Kauffman,* 418 F2d 163, 167).

It is obvious that the Legislature's requirement that the State Liquor Authority furnish each licensee "a statement of the causes for which licenses may be revoked" (Alcoholic Beverage Control Law, § 114) would have little meaning if the Authority could revoke, cancel or suspend in reliance upon causes which are so devoid of specificity that licensees would

---

1. (9 NYCRR 53.1 [q] provides that

"Any license or permit issued pursuant to the Alcoholic Beverage Control Law may be revoked, cancelled or suspended for the following causes: * * *

"(q) When any noise, disturbance, misconduct, disorder, act or activity occurs in the licensed premises, or in the area in front of or adjacent to the licensed premises, or in any parking lot provided by the licensee for use by licensee's patrons, which, in the judgment of the Authority, adversely affects or tends to affect the protection, health, welfare, safety or repose of the inhabitants of the area in which the licensed premises are located, or results in the licensed premises becoming a focal point for police attention or is offensive to public decency."

be trapped without fair warning (see *Grayned v City of Rockford,* 408 US 104, 108-109). On the other hand, the requirement of impossible standards of specificity in regulations by the Authority would unduly weaken and inhibit enforcement. The void-for-vagueness doctrine embodies a "rough idea of fairness" *(Colten v Kentucky,* 407 US 104, 110) and the most common standard by which the sufficiency of statute is measured when attacked for vagueness is that it must not be so drawn that men of common intelligence must necessarily guess at what conduct is prohibited *(Broadrick v Oklahoma,* 413 US 601, 607; *People v Lang,* 36 NY2d 366, 369, *supra; People v Byron,* 17 NY2d 64, 67, *supra).*

Petitioner contends that the words "any noise disturbance, misconduct and disorder" which adversely affect the health, welfare, safety or repose are ambiguous and fall short of the required standard. In *Kovacs v Cooper* (336 US 77, 79) the Supreme Court upheld an ordinance forbidding the operation on public property within the city limits of sound trucks emitting "loud and raucous" sounds. Noting that "[w]hile these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden". In *Grayned v City of Rockford* (408 US 104, 108, *supra)* the court sustained an antinoise ordinance which proscribed acts which "shall willfully make or assist in making any noise or diversion which disturbs or tends to disturb the peace or good order". Mr. Justice MARSHALL stated at page 110 that the words of the "ordinance are marked by 'flexibility and reasonable breadth rather than meticulous specificity', *Esteban v Central Missouri State College,* 415 F. 2d 1077, 1088". Although the Buffalo ordinance in *People v Taub* (37 NY2d 530, 533) was declared invalid as an intrusion on protected First Amendment rights, the Court of Appeals noted that the part of the ordinance which provided that emissions from sound amplification equipment audible at a distance of more than 100 feet and that the volume of such sound should not be "unreasonable, raucous, jarring, disturbing, or a nuisance to persons within the area of audibility" does not suffer from vagueness and "cannot be attacked for insufficient specificity [citations omitted]". (See, also, *State v Holland,* 132 NJ Super 17; *Haggerty v Associated Farmers of Cal.,* 44 Cal 2d 60; *State v Dorsett,* 3 NC App 331; *People v Byron,* 17 NY2d 64, *supra.)*

It is fundamental that an administrative regulation, such as

this section in order to be valid, must be reasonably related to the purposes of the statute it amplifies *(Urowsky v Board of Regents,* 38 NY2d 364, 368; *Strauss v University of State of N.Y.,* 2 NY2d 464, app dsmd 355 US 394, reh den 355 US 968; *Matter of Thompson Water Works Co. v Diamond,* 44 AD2d 487). There can be no question that subdivision (q) of section 53.1 is rationally related to the broad goals of the Alcoholic Beverage Control Law (see Alcoholic Beverage Control Law, § 2).

The section under attack is not irrational and there can be no legitimate claim that it is directed toward the abridgement of free expression under the guise of regulation. Given the "added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires" *(California v LaRue,* 409 US 109, 118-119), petitioner has failed to carry its burden of proof (see *Matter of 92-94 Fat Man Rest. Corp. v State Liq. Auth.,* 57 AD2d 1084).

Finally, petitioner argues that respondent's suspension of his license for a period of 30 days was an abuse of discretion, alleging in its petition that "the closing of the licensed premises will result in irreparable damage to petitioner". The rule governing judicial review of administrative sanctions is that the penalty imposed will not be disturbed unless it is "so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness" *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 223, quoting *Matter of Stolz v Board of Regents,* 4 AD2d 361, 364). (See, also, *Matter of Shore Haven Lounge v New York State Liq. Auth.,* 37 NY2d 187, 190; *Matter of Butterly & Green v Lomenzo,* 36 NY2d 250, 255.) In light of the on-going nature of the violation it cannot be said that the period of suspension is shocking to the conscience or an abuse of discretion.

Determination of the State Liquor Authority should be confirmed.

MOULE, J. P., SIMONS, DILLON and WITMER, JJ., concur.

Determination unanimously confirmed, without costs.