■ In the Matter of ANITA STEVENS, Petitioner, v BOARD OF REGENTS OF THE UNIVERSITY OF THE STATE OF NEW YORK et al., Respondents. — Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law, § 6510-a, subd 4) to annul a determination of the Commissioner of Education which revoked petitioner's license to practice medicine in New York State. Petitioner is a physician licensed to practice psychiatry in New York. She was the sole shareholder of the Stevens Psychiatric Center, a provider of psychiatric services to Medicaid patients at three clinics located in New York City. Petitioner was convicted in March of 1979, upon her plea of guilty, of the former class A misdemeanor of conspiracy in the third degree (former Penal Law, § 105.05). The charges arose out of petitioner's repeated practice of billing Medicaid for one hour of services when patients were actually seen for substantially less time, and the alleged preparing of Medicaid invoices which certified that patients had been treated on days they were not treated and by doctors who had not treated them. Petitioner was sentenced to pay a fine of $5,000, which was paid. Additionally, she was required to pay $40,000 in restitution. Subsequently, following a hearing on certain charges of professional misconduct held before a panel of the State Board for Professional Medical Conduct and after other administrative procedures and proceedings were conducted, the Commissioner of Education revoked petitioner's license to practice medicine and fined her $10,000. Petitioner was also suspended from participation in the Federal Medicare program for two years and permanently suspended from the New York State Medicaid program. This proceeding to annul the determination of the Commissioner of Education revoking petitioner's license to practice medicine in New York ensued. The determination issued by the Commissioner of Education should be confirmed and the petition dismissed. The revocation of her license to practice medicine is not so disproportionate a penalty to the offenses committed as to shock one's sense of fairness (see *Matter of Butterly & Green v Lomenzo*, 36 NY2d 250; *Matter of Pell v Board of Educ.*, 34 NY2d 222, 233; *Matter of Meltzer v Ambach*, 78 AD2d 733). Petitioner's arguments that the circumstances surrounding her guilt do not justify revocation of her license to practice medicine are unpersuasive. She argues with regard to the finding that she fraudulently practiced medicine that the commissioner and Board of Regents ignored the fact that the improper billing procedures were not designed to bring financial gain to her, but were utilized to keep the clinics for the indigent financially viable. Petitioner explains how Medicaid permits the billing of a maximum of only 10 patients for 45-minute sessions each per day and that clinic patients were unable to withstand sessions lasting longer than 15 minutes or so because of their particular problems, i.e., drug and/or alcohol abuse. In order to receive the

maximum amount allowed by Medicaid, petitioner would bill the first 10 patients each day for a full 45-minute session and then allegedly spend the rest of the day seeing patients for whom she did not charge. However, this argument as a justification for overbilling fails when it is considered that the compensation rate paid by Medicaid was $6 for each 12 minutes of treatment (9 minutes in treating the patient, 3 minutes for paper work). Petitioner could have billed for the actual time each patient was treated and remained within the maximum time limitation. This would have resulted in a little more paper work for the clinics. Furthermore, petitioner fails to acknowledge that she was also found guilty of preparing invoices certifying that she had treated patients who had in fact been treated by someone else and of certifying that doctors had treated patients on days when the doctors were not present at the particular clinic named. Moreover, in this case the harm done to the Medicaid program was substantial, amounting to a fraud of $29,464, regardless of any harm to petitioner's individual patients. It has been held that in determining whether a given penalty is disproportionate in light of all the circumstances, it is relevant to consider the substantial public harm caused by repeated violations and the deterrent effect which a substantial penalty may have on other providers of services to the medically indigent (*Schaubman v Blum,* 49 NY2d 375, 379; see, also, *Matter of Chaplan v Ambach,* 91 AD2d 736). On this record, therefore, it would be inappropriate for this court to disturb the determination reached by the Commissioner of Education. Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Mikoll, Yesawich, Jr., Weiss and Levine, JJ., concur.